## MAAS & WALDSTEIN CO. *v.* UNITED STATES.

No. 263.   Submitted March 12, 1931.—Decided May 25, 1931.

584

*Messrs. George E. Holmes, Valentine B. Havens, W. A. Sutherland,* and *Donald Havens* were on the brief for petitioner.

*Solicitor General Thacher, Assistant Attorney General Rugg,* and *Messrs. Claude R. Branch,* Special Assistant to the Attorney General, *Charles R. Pollard, H. Brian Holland,* and *Erwin N. Griswold* were on the brief for the United States.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

The petitioner seeks to recover interest on an overpayment made June 20, 1918, on account of income and excess profits taxes assessed for the year 1917, which was refunded during 1922. The Court of Claims denied relief and we are asked to reverse this action.

The Revenue Act of 1917, 40 Stat. 300, 303, 304, 307, laid an income tax; also a tax upon excess profits equal to designated percentages of the net income, after making deductions therefrom as stated in § 203. The amount of such deductions depended upon invested capital, prewar operations, etc.

The provisions of that Act here specially applicable follow—

" Sec. 205. (a) That if the Secretary of the Treasury, upon complaint finds either (1) that during the prewar period a domestic corporation or partnership, or a citizen or resident of the United States, had no net income from the trade or business, or (2) that during the prewar period the percentage, which the net income was of the invested capital, was low as compared with the percentage, which

the net income during such period of representative corporations, partnerships, and individuals, engaged in a like or similar trade or business, was of their invested capital, then the deduction shall be . . ."

" Sec. 210. That if the Secretary of the Treasury is unable in any case satisfactorily to determine the invested capital, the amount of the deduction shall be the sum of (1) an amount equal to the same proportion of the net income of the trade or business received during the taxable year as the proportion which the average deduction (determined in the same manner as provided in section two hundred and three, without including the $3,000 or $6,000 therein referred to) for the same calendar year of representative corporations, partnerships, and individuals, engaged in a like or similar trade or business, bears to the total net income of the trade or business received by such corporations, partnerships, and individuals, plus . . ."

Article 52, Treasury Department Regulations 41, promulgated under the Revenue Act of 1917 states—" Section 210 provides for exceptional cases in which the invested capital can not be satisfactorily determined. In such cases the taxpayer may submit to the Commissioner of Internal Revenue evidence in support of a claim for assessment under the provisions of section 210."

Revenue Act of 1921, c. 136, 42 Stat. 227, 316—

" Sec. 1324 (a). That upon the allowance of a claim for the refund of or credit for internal revenue taxes paid, interest shall be allowed and paid upon the total amount of such refund or credit at the rate of one-half of 1 per centum per month to the date of such allowance, as follows: (1) if such amount was paid under a specific protest setting forth in detail the basis of and reasons for such protest, from the time when such tax was paid. . . ."

The petitioner, a domestic corporation, on March 28, 1918, filed its income and excess profits tax return for the year 1917. From this it appeared that, reckoned

according to the rule commonly applicable, the tax amounted to $1,508,400.25. With the return petitioner sent a written communication, addressed to the Commissioner, copied in the margin.* This expressed the opinion " that our tax is proportionately larger than that of other representative concerns in the same line of business " and " that this disproportion arises from causes of the nature of those specified in Article 52, of Regulations No. 41." And finally: " Upon the above statement, which we are prepared to support and amplify if required, we request assessment in the manner provided for in Article 52, referring also to Articles 18 and 24, Regulations No. 41."

---

*MAAS & WALDSTEIN CO.

March 28, 1918.

*Commissioner of Internal Revenue, Washington, D. C.*

DEAR SIR: We beg to submit herewith tax returns for the Maas & Waldstein Company covering the year 1917 as follows:

| *Tax return* | *Amount of tax* |
|---|---|
| Corporation Income Tax Return.......... | $72,762.90 |
| "        "       "       "    .......... | 482.56 |
| Munitions Manufacturers' Tax Return...... | 242,704.39 |
| Corporation Excess Profits Tax Return..... | 1,435,637.35 |
| Total Amount of Tax.................. | $1,751,587.20 |

Our net income for the taxable year was $2,656,395.01. We are therefore required to pay in the above taxes substantially 66% of our net income. Of the total amount of the Excess Profits Tax, substantially 83% is assessed at the 60% rate, in addition to which we are required to pay over $242,000 for the Munitions Manufacturers' Tax.

It is our opinion that our tax is proportionately larger than that of other representative concerns in the same line of business. It is our further opinion that this disproportion arises from causes of the nature of those specified in Article 52, of Regulations No. 41, for the following reasons:

1. Under paragraph 3, Article 52, it is our belief that through the simple form and manner of our organization we are placed at a disadvantage in comparison with representative concerns in a similar trade or business. In accordance with the regulations applying to

On June 20, 1918, payment was made of the full amount of the tax reckoned upon the March 28 return. This was accompanied by a letter stating " we filed a request dated March 28th for assessment in the manner provided for in Article 52, referring also to Articles 18 and 24, Regulations 41. Understanding that these questions will be passed upon at a later date, we shall be pleased to be advised that a hearing will be granted to us." At this time no provision of law permitted recovery of interest upon refunded overpayments.

---

Excess Profits Tax Returns, we have reduced the value of the tangible assets acquired at the time of our organization to $100,000. No proper evidence of the actual value of these assets when acquired by the corporation is now in existence, but it is our opinion that their actual value was far in excess of $100,000. By reason of our organization, it has been possible to make our return in strict accord with the law and the regulations. We believe that this fact places us at a disadvantage with concerns which, by reason of the manner of their organization, and by reason of reorganizations through which they may have passed, are not able to correct their capital account in the manner provided in the regulations.

2. Under paragraph 4, Article 52, our invested capital, when computed in the manner specified in the regulations, is manifestly seriously disproportionate to the taxable income. This arises in part for the reasons specified in the preceding paragraph, and in part for the reason specified under (b) in paragraph 4. About 90% of our total net income was earned through the operation of our gun cotton plant. This plant was erected solely for war purposes to meet the needs of a foreign government and will not be wanted for the purpose of our trade or business after the termination of the war. Under the regulations it has not been possible to properly allow for the amortization and exceptional depreciation of this plant.

Upon the above statement, which we are prepared to support and amplify if required. we request assessment in the manner provided for in Article 52, referring also to Articles 18 and 24, Regulations No. 41.

Very truly yours,

Maas & Waldstein Co., Henry V. Walker, President.

December 30, 1921, petitioner filed a formal claim for the refund of excess payment of income and excess-profits tax for 1917.

The petitioner now claims that the contents of its letter of March 28, 1918, reiterated in the later one, were sufficient to meet the requirements of § 1324 (a), Act of 1921—that what was there written amounted to "a specific protest setting forth in detail the basis of and reasons for such protest," within the meaning of the statute. The Court of Claims held otherwise; and while its opinion cannot be wholly approved, the judgment is correct and must be affirmed.

The general purpose of the petitioner's communications to the Commissioner was to induce the latter to set on foot an investigation of the Company's affairs to the end that, after ascertaining the circumstances and in the exercise of a proper discretion, he might make an assessment duly proportioned to those imposed upon others engaged in like business. There was no challenge of the Commissioner's right then to demand payment according to the general rule—no claim that in view of the facts then before him this would amount to an unlawful imposition. Considering the circumstances disclosed, the Commissioner did nothing unjust or contrary to law when he demanded payment; and if he had concluded to take no further proceedings, the petitioner could have recovered nothing. *Williamsport Wire Rope Co.* v. *United States*, 277 U. S. 551.

In *Girard Trust Company* v. *United States*, 270 U. S. 163, 170, 173, this Court pointed out that the Act of 1921 is remedial and was passed with the general purpose to " require the Government to recoup the taxpayer unjustly dealt with by paying interest during the whole time the money was detained." Also, we there said—"A protest is for the purpose of inviting attention of the taxing

officers to the illegality of the collection, so that they may take remedial measures at once."

We are unable to conclude that the petitioner's action amounted to a precise objection to an unauthorized exaction within the fair intendment of the statute. Meticulous compliance by the taxpayer with the prescribed conditions must appear before he can recover. *Lucas* v. *Pilliod Lumber Co.,* 281 U. S. 245, 249.

- *Affirmed.*