## FULTON BAG & COTTON MILLS v. UNITED STATES.
### No. K–80.

Court of Claims.
May 2, 1932.

916

of the Fulton Bag & Cotton Mills of Brooklyn, N. Y., a New York corporation. The latter corporation was dissolved in January, 1918, and all its assets and liabilities were taken over by the plaintiff.

On March 27, 1918, the plaintiff filed with the collector of internal revenue at Brooklyn, N. Y., the income and excess profits tax return for its subsidiary corporation for the year 1917, and on June 13, 1918, paid the collector the tax shown to be due thereon. On March 29, 1918, plaintiff filed its own income and excess profits tax return for the year 1917, with the collector of internal revenue at Atlanta, Ga., and on June 15, 1918, paid the collector the tax shown to be due thereon.

The Commissioner of Internal Revenue, in 1923, granted the plaintiff the benefit special assessment under section 210 of the Revenue Act of 1917, which it had theretofore, on a claim dated September 5, 1922, requested. The Commissioner determined that the plaintiff had overpaid its income and excess profits taxes for the year 1917 in the sum of $106,933.92, and that it had overpaid the taxes of its dissolved subsidiary in the sum of $48,801.75, making a total overpayment for the year, of $155,735.67. Of this amount $137,326.63 was refunded to the plaintiff, and the balance, $18,409.04, was credited against taxes due the government for the year 1922.

There is no controversy between the parties as to the correctness of the Commissioner's determination of the amount of the overpayment, or the manner in which it was refunded and credited. The controversy relates wholly to the amount of interest the plaintiff is entitled to receive on the overpayment.

The Commissioner allowed interest on the amount refunded, from six months after the filing of the claim for refund, to the date of the allowance of the refunds.

The plaintiff claims it paid the tax in question under specific protest within the requirements of clause (1), of section 1324 (a) of the Revenue Act of 1921, 42 Stat. 316, and that interest was allowable from the date of payment of the tax. The act provides:

"(a). That upon the allowance of a claim for the refund of or credit for internal revenue taxes paid, interest shall be allowed and paid upon the total amount of such refund or credit at the rate of one-half of 1 per centum per month to the date of such allowance, as follows:

"(1) If such amount was paid under a specific protest setting forth in detail the

W. A. Sutherland, of Atlanta, Ga. (Joseph B. Brennan, of Atlanta, Ga., on the brief), for plaintiff.

Charles R. Pollard, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen. (D. Louis Bergeron, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, and WILLIAMS, Judges.

WILLIAMS, Judge.

The plaintiff, a Georgia corporation, during the year 1917, owned all the capital stock

basis of and reasons for such protest, from the time when such tax was paid."

At the time of the payment of its 1917 taxes, June 15, 1918, plaintiff filed with the collector of internal revenue at Atlanta, a letter protesting the payment on the ground that the tax was erroneous and illegal; especially that part of the tax relating to excess profits. The plaintiff concedes this letter was not a specific protest within the meaning of section 1324 (a), and relies wholly upon certain oral representations made to the collector by plaintiff's legal adviser, at the time of the payment of the tax, as constituting a specific protest.

It appears plaintiff is an old and conservatively managed corporation, the capital stock of which is closely held, being practically a one-family concern. Prior to 1917, proper adjustments in invested capital had not been made and the net earnings of the company for 1917, as shown by its books, on which it was required to pay taxes, were, in the opinion of officers of the company, excessive and placed plaintiff in the position of paying more taxes proportionately than other companies similarly situated whose books reflected the true invested capital. On the day the taxes were paid, plaintiff's vice president, accompanied by his legal adviser, called upon the collector and had a conversation with him about this situation of the plaintiff company. The collector was informed that the company's invested capital, as shown on its books, was largely understated, and that the taxes being collected were out of all proportion to the taxes paid by competitive corporations less conservatively capitalized. The conversation between plaintiff's representative and the collector, which was characterized by plaintiff's witness as being "fussing and fuming," was somewhat extended, but the only protest made against the tax was that it was excessive because of the plaintiff's failure, in prior years, to make proper adjustments of its invested capital. These oral representations were not reported to the Commissioner of Internal Revenue by the collector.

█ It is not necessary to pass upon the plaintiff's contention that an oral protest, if otherwise satisfactory, meets the requirements of the statute, as, in our opinion, the oral statements made to the collector, even if they had been made in writing, were not sufficient to constitute a specific protest. The legality of the tax is not challenged, and the right of the taxing officials to exact payment of the taxes shown to be due on the return is not questioned in any way. In this respect the oral protest is lacking in the essential requirements of a specific protest. Girard Trust Company v. United States, 270 U. S. 163, 46 S. Ct. 229, 70 L. Ed. 524; United States v. Magnolia Petroleum Co., 276 U. S. 160, 48 S. Ct. 236, 72 L. Ed. 509.

█ A protest is for the purpose of inviting attention of the taxing officers to the illegality of the collection, so that they may take remedial measures at once. Girard Trust Company v. United States, supra.

The oral statements, relied upon as constituting a specific protest to the payment of the tax amount, at most, to an argument justifying special assessment under section 210 of the Revenue Act of 1917. If, as has been held, a request for special assessment under section 210 is not a specific protest within the meaning of section 1324 (a), Maas & Waldstein Co. v. United States, 283 U. S. 583, 51 S. Ct. 606, 607, 75 L. Ed. 1285, and Chestnut & Smith v. United States (Ct. Cl.) 55 F.(2d) 1012, decided February 8, 1932, certainly an argument by a taxpayer supporting the right to special assessment cannot be held to be a specific protest.

In Maas & Waldstein, supra, the taxpayer filed his income and excess profits tax returns for the year 1917 in the same manner as did the plaintiff in the instant case. With the return the taxpayer sent a written communication stating: "Our tax is proportionately larger than that of other representative concerns in the same line of business," and "under paragraph 4, article 52 our invested capital, when compared in the manner specified in the regulations, is manifestly seriously disproportionate to the taxable income." On the payment of the taxes the taxpayer again wrote the Commissioner stating: "We filed a request dated March 28, for assessment in the manner provided for in article 52, referring also to articles 18 and 24, regulations 41." The taxpayer contended these two letters were sufficient to meet the requirements of section 1324 (a) as to "a specific protest setting forth in detail the basis of and reasons for such protest." The Supreme Court, overruling the taxpayer's contention, through Mr. Justice McReynolds, said:

"The general purpose of the petitioner's communications to the commissioner was to induce the latter to set on foot an investigation of the company's affairs to the end that, after ascertaining the circumstances and in

the exercise of a proper discretion, he might make an assessment duly proportioned to those imposed upon others engaged in like business. There was no challenge of the commissioner's right then to demand payment according to the general rule—no claim that in view of the facts then before him this would amount to an unlawful imposition. * * *

"We are unable to conclude that the petitioner's action amounted to a precise objection to an unauthorized exaction within the fair intendment of the statute. Meticulous compliance by the taxpayer with the prescribed conditions must appear before he can recover. Lucas v. Pilliod Lumber Company, 281 U. S. 245, 249, 50 S. Ct. 297, 74 L. Ed. 829, 67 A. L. R. 1350."

The facts in the case at bar are in all essential respects similar to the facts in the case cited, except that the alleged specific protest in the instant case was made orally to the collector, while the protest in the former case was made in writing, and addressed to the Commissioner. Conceding, without deciding, that a specific protest within the requirements of section 1324 (a) of the Revenue Act of 1921 can be made orally, the plaintiff in this case cannot recover, as the statements relied upon are not sufficient to constitute a specific protest within the meaning of the section. There is no claim that in view of the facts then before the taxing officials the amount of tax shown to be due on the plaintiff's return amounted to an unlawful imposition. The return upon which the tax was based was made out in the manner provided by law, and the amount of tax shown to be due was based on plaintiff's net earnings for the year, as reflected by its books. Plaintiff's right to be relieved from the general application of the law, and to have its tax liability determined under the provisions of section 210, of the Revenue Act of 1917, was dependent entirely upon its ability to make the showing required in that section, and the granting of that privilege to the plaintiff, as the Commissioner subsequently did, does not make the original tax computed under the strict application of the law illegal, or its collection an unauthorized exaction.

The petition will therefore be dismissed. It is so ordered.

WHALEY, Judge, took no part in the decision of this case.