**TABER v. UNITED STATES (two cases).**

**Nos. 9304, 9305.**

Circuit Court of Appeals, Eighth Circuit.

May 5, 1932.

Rehearing Denied June 24, 1932.

A. Hollingsworth, of Keokuk, Iowa (Hollingsworth & Hollingsworth, of Keokuk, Iowa, on the brief), for appellants.

William B. Waldo, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Ross R. Mowry, U. S. Atty., of Newton, Iowa, and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for the United States.

Before STONE and BOOTH, Circuit Judges, and WYMAN, District Judge.

WYMAN, District Judge.

The above-named appellants have appealed to this court from the action of the United States District Court for the Southern District of Iowa, denying to appellants recovery for income taxes claimed to have been illegally and erroneously assessed, and paid by appellants under protest.

There seems to be little, if any, dispute as to the facts in the case, which as found by the trial court, are substantially as follows:

That on December 31, 1920, and for some time prior thereto, each plaintiff (appellant) was a holder of one-half of the corporate stock in each of two Iowa corporations, one, Taber Lumber Company, and the other, the Taber Company. For some time prior to December 31, 1920, appellants had under consideration a plan to dissolve the corporations and continue the operation of the business in which they were engaged as a partnership in which appellants were to be equally interested. It was the intention and desire that the transfer from the corporate ownership and management to the partnership should be made as of midnight the 31st day of December, 1920. In furtherance thereof an attorney was employed who drew up the proper and necessary resolutions and the record of corporate meetings providing for the purchase of the corporate property and payment therefor by the partnership, the transfer of the corporate assets to the partnership, the distribution of the proceeds thereof, and the dissolution of the corporations, all as of December 31, 1920, except that by the provisions of the resolutions the transfer of the personal property was to take effect immediately after 12 p. m. December 31, 1920. Upon the record thus made a deficiency income tax was assessed for the year 1920 against Benjamin Carroll Taber in the sum of $5,951.-26, and against Edward Carroll Taber in the sum of $6,224.51, which amounts were paid under protest. On September 29, 1929, suits were instituted in the District Court to recover the deficiency taxes paid under protest; the petition in each of said suits alleging, among other things, a claim that, although the documents making the transfers were executed December 31st, 1920, it was the understanding at the time the papers were executed, and the intention of the parties as expressed in the resolution, that the transfer, so far as the personal property was concerned, was not to take effect until after midnight of the 31st of December, 1920, and that a claim for refund was duly filed with the Commissioner of Internal Revenue, upon the following grounds:

"1. That both of the corporations were dissolved in the calendar year of 1921 and not in the calendar year of 1920.

"2. That no distribution and liquidation was made or could have been made within the calendar year 1920 from the assets of either corporation.

"3. That the adjustments made on account of the profit construed to have been realized from the dissolution of the two corporations before named are applicable to the calendar year 1921, and not to the calendar year 1920."

On November 12, 1930, two days before the commencement of the trial, an amendment was filed to the petition setting up for the first time and claiming that the conveyances were executed after the 31st day of December, 1920, and it is found by the court that all of the papers herein above referred to were, in fact, signed by the parties on January 3, 1921. All of these transactions, as evidenced by the papers and documents in-

troduced in evidence, were paper transactions. No cash or credits were in fact transferred to these plaintiffs by the checks, and the placing of the checks in the bank on or about March 23, 1921, did not evidence any transfer of money, but was done to show the completion and carrying out of the intention of the parties expressed in the proceedings had by the stockholders and directors of the two corporations. The corporations ceased doing business at midnight December 31, 1920, and the partnership, as such, continued the business, commencing on midnight, December 31, 1920. The court therefore in each of the cases finds as an ultimate fact and for the purpose of this trial the distribution was, in fact made on December 31, 1920, and that the taxing authorities were right in assessing any profits made by the individuals growing out of such corporate transactions to be taxable income of the individuals for the year 1920.

The question upon which these cases must turn manifestly involves the determination as to whether or not the appellants derived a taxable income from the distribution of the assets of the corporations during the year of 1920. If appellants are to recover in these cases, it must affirmatively appear by the record that the profit or income which forms the basis for the tax was not received by them during the year 1920. The tax was evidently assessed upon the assumption, which is amply warranted by the evidence, that meetings of the stockholders and directors of each of the two corporations were held on December 31, 1920; that at such meeting the stockholders of each corporation decided to sell all of the corporate assets to the partnership in consideration of the assumption on the part of the partnership of the corporate debts, and the payment to each corporation by the partnership of a specified sum in cash; that said stockholders authorized the proper officers of the respective corporations to execute and deliver the necessary and proper papers evidencing such transfers; and that the assets of the corporations were actually turned over to said partnership, which thereupon paid to each corporation the amount specified, and assumed the corporate indebtedness. The record discloses and the trial court finds that, while the minutes of the corporate meetings, the several resolutions and other papers evidencing these proceedings, all purport to have been signed and executed on December 31, 1920, they were in truth not signed and executed until the 3rd day of January, 1921.

In this state of the record the trial court "finds as an ultimate fact for the purpose of this trial, that distribution was in fact made on December 31, 1920," and under the well-established rule this finding must not be disturbed if the record discloses substantial evidence to support it. The tax having been assessed upon the basis that the distribution was made and the income received during the year 1920, the burden was on the appellants to overcome the presumption of validity with which the tax is clothed. In the absence of proof to the contrary, it must be presumed that these corporate meetings were in fact held on December 31, 1920, and that these various proceedings incident to the transfer of the corporate assets were had at that time, and the fact that the formal minutes, records, and instruments evidencing such facts were not prepared and executed until the later date does not, in our opinion, tend to overcome this presumption. Appellants were the sole stockholders in the corporations, and they alone constitute the partnership. They both testified at the trial, and there is nothing in the testimony of either of them inconsistent with the presumption that these corporate meetings were held and that the assets of the corporations were turned over to the partnership on December 31, 1920. Manifestly appellants have failed to sustain the burden of proof in this regard, and the finding of the trial court to the effect that distribution of the corporate assets was in fact made on December 31, 1920, is abundantly supported by the evidence and must stand.

[4-6] It will be noted, however, that the statute (Revenue Act 1918, § 201, 40 Stat. 1059) imposes the tax, not upon the distribution of the corporate assets but upon the income derived from such distribution, and it is contended by appellants that, because of the fact that the minutes of the corporate meetings, the resolutions and other documents evidencing the transfer of the corporate property, were not executed and delivered until after the expiration of the year 1920, title to the property did not vest in appellants until 1921, and consequently no taxable income was by reason of said distribution received by either of them in the year 1920. The short answer to this contention is that the facts upon which it is predicated, while wholly within the knowledge of the appellants, were not set forth in the claims for refund presented to the Commissioner of Internal Revenue, nor in any way disclosed to the taxing authorities until two days prior to the trial of the case in the District Court. One of the

principal requirements of the statute (26 USCA § 156) providing for the filing of a claim for refund is to advise the taxing authorities of the demands or claims intended to be asserted, and the facts upon which they are based, to the end that the Commissioner may pass upon the validity of the claim in the light of all of the pertinent facts, and thus save unnecessary delay and expensive litigation. The right of the taxpayer to sue for the recovery of a tax unlawfully exacted and paid is purely statutory, and is available only to those who comply with the statutory requirements.

"Meticulous compliance by the taxpayer with the prescribed conditions must appear before he can recover." Maas & Waldstein Co. v. U. S,. 283 U. S. 583, 51 S. Ct. 606, 608, 75 L. Ed. 1285; Wausau Sulphate Fibre Co. v. U. S. (Ct. Cl.) 49 F.(2d) 665.

The United States has consented to be sued by a taxpayer for the recovery of a tax alleged to have been illegally exacted and paid only in cases where the grounds asserted in the suit have been presented to and passed upon by the Commissioner of Internal Revenue. J. P. Stevens Engraving Co. v. U. S. (C. C. A.) 53 F.(2d) 1; U. S. v. Felt & Tarrant Mfg. Co., 283 U. S. 269, 51 S. Ct. 376, 75 L. Ed. 1025; Tucker v. Alexander (C. C. A.) 15 F.(2d) 356; Red Wing Malting Co. v. Willcuts (C. C. A.) 15 F.(2d) 626, 49 A. L. R. 459.

The claims for refund presented to the Commissioner of Internal Revenue did not suggest nor in any manner hint at the existence of the claim now urged to the effect that, while dated December 31, 1920, the documents evidencing the transfer of the corporate assets were, in fact, not executed or delivered until January 3, 1921, and that hence no title passed to the taxpayers in 1920. Therefore, under the well-settled law, this ground of attack is not now available to appellants.

This brings us to the question presented in the claims for refund. The claims for refund, so far as the grounds therein specified are concerned, are identical, and, while three separate grounds are set forth, they all form the basis for but one contention, which is that there was no distribution of assets in liquidation of the corporations in 1920, because such distribution could not take place and a complete title vest in the taxpayers until the legal dissolution of the corporations, which could not and did not occur until some time early in the year 1921.

The validity of the tax here involved depends upon the facts disclosed by the record, and, in deciding the question presented, the court should look to the substance rather than to the form of the transaction. The facts unquestionably are that, while the corporations may not have been legally dissolved until early in the year 1921, they in fact ceased to function as corporate entities on December 31, 1920, when the distribution of the corporate assets was made and the business and property was taken over by the partnership. The appellants received the property on December 31, 1920, and have remained in undisputed possession and enjoyed the benefits and privileges of absolute ownership of it ever since said last-mentioned date. The income thus derived is clearly taxable, and, as it was actually received by the taxpayers in 1920, the conclusion necessarily follows that the holdings of the Commissioner and the Trial Court were correct.

The judgment appealed from is therefore affirmed.