## BEMIS BROS. BAG CO. v. UNITED STATES.

### No. 9415.

Circuit Court of Appeals, Eighth Circuit.

Aug. 29, 1932.

Rehearing Denied Sept. 30, 1932.

Abraham Lowenhaupt, of St. Louis, Mo. (Spencer M. Thomas and Lowenhaupt & Waite, all of St. Louis, Mo., on the brief), for appellant.

Frederick W. Dewart, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Louis H. Breuer, U. S. Atty., of Rolla, Mo., Claude M. Crooks, Asst. U. S. Atty., of St. Louis, Mo., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for appellee.

Before GARDNER and SANBORN, Circuit Judges, and NORDBYE, District Judge.

NORDBYE, District Judge.

This action was brought to recover income and excess profits taxes paid by appellant for the years 1918 and 1919. The collector to whom the taxes were paid having gone out of office, the action was brought directly against the United States. The action was tried to the court without a jury on an agreed statement of facts. The only question presented to the lower court was whether or not the plaintiff in its claim for refund, at any time before the running of the statute of limitations, stated the facts or grounds upon which it asserted its right to a refund.

Paragraph 18 of the stipulation provides as follows:

"If the appellant within the time provided by law, filed claims for refund for the years 1918 and 1919 respectively, which, under the law were sufficient to be the required preliminary for the maintenance of this action on that ground, above stated, then appellant may be entitled to judgment for the year 1918 in the amount of $14,054.18, with interest, and for the year 1919 in the amount of $9,073.15, with interest.

"If the claims for refund filed by the appellant for the years 1918 and 1919 respectively, were not sufficient under the law to be the required preliminary for the maintenance of this action on that ground, the appellee will be entitled to judgment dismissing this action."

The appellant on February 29, 1924, filed its claim for refund for 1918 of $1,270,907.97, and on December 12, 1924, its claim for refund for 1919 in the sum of $606,546.13. These claims for refund were based on the contention that the excess profits tax and war profits tax should be assessed under the provisions of sections 327 and 328 of the Revenue Act of 1918 (40 Stat. 1093). These sections are relief statutes enacted for the purpose of relieving a taxpayer from an excessive tax. Provision is made in section 327 for cases where the Commissioner is unable to determine the invested capital of the taxpayer, and in section 328 it is provided that "in the cases specified in section 327 the tax shall be the amount which bears the same ratio to the net income of the taxpayer (in excess of the specific exemption of $3,000) for the taxable year, as the average tax of representative corporations engaged in a like or similar trade or business, bears to their average net income (in excess of the specific exemption of $3,000) for such year."

In filing its claims for refund for the years 1918 and 1919, reference was made to a brief theretofore filed in support of the claim for refund for the 1917 taxes, and an additional brief was filed in support of the claims for refund for the years 1918 and 1919. The claim for refund for the year 1918 stated the following:

"Deponent verily believes that this application should be allowed for the following reasons: The Excess Profits Tax and War Profits Tax against this company for the year 1918 should be assessed under the provisions of sections 327 and 328 of the Revenue Act of 1918.

"The facts and argument in support of this claim are contained in a brief, duly verified, which has been filed with the Commissioner of Internal Revenue, in support of a claim for refund made in connection with the company's return for 1917 and the tax paid thereon. The facts and circumstances which entitle the company to assessment under said sections for 1917 obtained also in 1918. In order to simplify matter and avoid repetition, the brief filed with the claim for refund for 1917 (a copy of which brief is attached hereto) by reference thereto is made a part of this claim."

The brief attached to the claim for refund and by reference made a part of it states as follows:

"In Re: Claim of Bemis Bro. Bag Company for Refund of Taxes for the Year 1917 Based Upon Right to Special Assessment.

"To the honorable Commissioner of Internal Revenue, Washington, D. C.:

"Bemis Bro. Bag Company has heretofore filed its claim for refund of taxes for the year 1917, based upon the right to assessment of its Excess Profits Taxes under section 210 of

the Revenue Act of 1917. It now desires to elaborate and present in detail the reasons why its Excess Profits Tax for said year should be so determined.

"Statement.—The facts are hereafter stated in the order and under the subdivision above written.

"I. Reasons Why the Tax Should be so Determined and the Facts Upon which Such Reasons Are Based.

"V. Relief Sought.

"Relying upon the sufficiency of the facts above recited to entitle it to the assessment of its Excess Profits Tax liability under the provisions of section 210 of the Revenue Act of 1917, Bemis Bro. Bag Company has heretofore presented a claim for refund for the year 1917."

A similar statement and a similar reference to the 1917 brief was used in filing the claim for refund for the year 1919.

The appellant in filing its claim for refund for the years in question, in the brief above referred to, attempted to set forth in substantiation of its claim, the fact that injustice would be done if it were not permitted to receive the benefit of the special assessment provided in sections 327 and 328 of the 1918 Revenue Act. It proceeded to set forth in detail the various phases of its business which made it difficult to determine the values of the several classes of property that were paid in for stock. It is quite apparent that the appellant was concerned over the large tax it was required to pay to the government, and felt that the relation of its income to its invested capital was strikingly abnormal. It set out a large number of reasons why it was entitled to a tax based on a comparison with representative corporations engaged in a like or similar business. Instances were cited of the accounting policy of the company in previous years where expenditures were charged to expense or profit and loss, when good accountancy would have justified the capitalization thereof. As an example of the conservative methods employed by the company, reference was made to certain printing plates which are used for the purpose of printing the various brands on the bags that are manufactured by the appellant. That is, the appellant is equipped to print upon the bags manufactured, the user's brands. During the years it has been in business, it has accumulated a large amount of printing sets for the printing of user's brands, which it contended were reasonably worth $851,375.50. The value was according to the taxpayer something

more than the mere consideration of bare labor and material that went into the manufacture of the printing set. It represented the results of alert business solicitation and advertising with years of service that has been rendered by it to its customers; consequently, it contended in this presentation to the Commissioner, that the printing equipment represented an accumulation of years of good will, and although expense had been charged from year to year for the actual outlay for labor and material, no portion of this value had ever been added to the invested capital.

The facts concerning the original incorporation of the company and the early history of the corporation were presented to substantiate the failure on the part of the company to capitalize its good will in the proper amount. New plants, it was contended, had been obtained from time to time, and no good will value was set up on the books for the different properties that were acquired in the long period of time that it had been engaged in the manufacturing business. Failure to properly capitalize certain patent rights was also set forth in the taxpayer's brief. Not all the various items which were incapable of proper valuation and which should have gone into capital were set forth. It was merely the intention of the taxpayer as disclosed by its brief, to throw some light upon what appeared to be abnormal profits upon which it was assessed; and it was contended by the taxpayer that the showing made entitled it to the special assessment that it requested. In other words, the various phases of the business of the taxpayer were set forth in order that the Commissioner would be convinced that the large taxes that had been assessed arose on account of under-capitalization, rather than excessive profits.

Section 156, title 26, USCA provides that: "No suit or proceeding shall be maintained in any court for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof. * * *"

The statute of limitations applicable fixes the time for filing such claim at four years after the payment of any part of the taxes. The claims filed on February 29, 1924, and

December 12, 1924, were timely, and were duly considered by the Commissioner on their merits. On October 30, 1926, a communication was sent by the Treasury Department to the taxpayer, a portion of which reads as follows:

"You are advised that after careful consideration and review your application under the provisions of section 327 of the Revenue Act of 1918 has been denied for the reason that the evidence presented fails to establish that your invested capital or net income is affected by abnormal conditions which would justify the Bureau in computing your tax under the provisions of section 328 of the above mentioned Act.

"In accordance with the above conclusions, your claim for refund will be rejected in full."

On November 27, 1926, a second communication was sent by the Treasury Department to the taxpayer, a portion of which reads as follows:

"After careful consideration and review, your application under provisions of sections 210 and 327 of the Revenue Acts of 1917 and 1918 for assessment of your profits tax as prescribed in sections 210 and 328 of the above mentioned Acts has been denied, inasmuch as the audit disclosed no exceptional hardship evidenced by gross disproportion between the tax computed by reference to representative concerns specified in sections 210 and 328.

"In accordance with the above conclusions, your claims for refund of $1,770,104.23 and $35,355.79 for 1917 and $1,270,907.97 for 1918 will be rejected in full."

It is clear that the claim for special assessment for the years 1918 and 1919 was rejected by these letters. On December 13, 1926, after the statute of limitations had run on these claims, the appellant sent to the Commissioner a communication referring to the rejection, and among other things said:

"We protest against the rejection of said claims for refund for the following reasons:

"(a) The excess profits tax against the Company for the year 1917 should be determined under section 210 of the Revenue Act of 1917 and the excess profits and war profits taxes for the years 1918 and 1919 should be determined under section 328 of the Revenue Act of 1918. The denial of said right must be based upon the use of improper comparatives as representative.

"(b) If the assessment of the excess profits taxes against the Company in the manner claimed in the above subdivision is denied, then the items heretofore presented which have been improperly eliminated from invested capital should be restored to invested capital and the excess profits tax recalculated on that basis."

Further communication was sent by the taxpayer under date of April 12, 1927. Under date of December 17, 1927, the Commissioner wrote advising that the claims for the years 1917, 1918, and 1919 had been reconsidered in connection with the taxpayer's protest, and the entire matter was then reviewed by the Commissioner, and the following is a portion of the communication so sent:

"In view of the above, your claim for the refund of $35,355.79, income and profits taxes for 1917, will be allowed for $32,675.42 and your claim for the refunding of $1,770,-104.23 for 1917 will be rejected in full, in the next schedule to be approved by the Commissioner.

"Inasmuch as computation of your tax liability for 1918 and 1919 under the provisions of sections 327 and 328 of the Revenue Act of 1918 (provision for special assessment) is denied and your claim for the refunding of $1,270,907.97 for 1918 is confined to that point, it will be rejected in full in the next schedule to be approved by the Commissioner.

"Your claim for the computation of your tax liability for 1919 under the provisions of sections 327 and 328 has already been rejected.

"The over-assessments indicated for 1918 and 1919 not being covered by proper claims are barred by the Statute of Limitations and cannot be allowed."

In the review that was made by the Commissioner, the printing equipment items were considered, and it was determined by the Commissioner that the stereo metal used in producing the patterns and plates should be capitalized at cost in that it had a life of some years. The following is quoted from the Commissioner's letter of December 17, 1927: "Your contention for the restoration of printing equipment charged to expense in the amount of $851,375.50, has been given careful consideration and it is found that all labor costs and material costs for patterns, plates, type and mats are charged directly to expense accounts in the current taxable years and it is believed such charges are proper. However, the stereo metal used in producing the patterns and plates inasmuch as it has a life of several years should be capitalized at

cost. The average cost of such metal from 1905 to 1916, inclusive, is $.0893 per pound. The average cost for a term of years prior to 1917 should be used instead of the average cost subsequent to that date, in determining the value of such metal on hand January 1, 1917."

The Commissioner then determined that the amount of $129,372.93 should be restored to printing equipment, and that the balance of the $851,375.50, or $722,002.57, should be disallowed for restoration to invested capital on the ground that it had been properly charged to expense. In making his computations, the Commissioner found that, after restoring the amount of $129,372.93 to the printing equipment, there had been an overassessment of $14,054.18 in the tax paid for the year 1918, and $9,073.15 in the tax paid in the year 1919. The overassessments for the year 1917 were allowed; however, for the years 1918 and 1919 they were disallowed by the Commissioner because he contended that no proper claims had been filed before these claims were barred by the statute of limitations.

The fact that the Commissioner took it upon himself in considering the 1917, 1918, and 1919 taxes, to reconsider the entire application, would not be of any avail to the appellant if in truth and in fact, the claim for refund sued upon herein was not filed with the Commissioner within the statutory period. It is not seriously contended by the appellant that the Commissioner waived any rights of the government by his communication of December 17, 1927. The Commissioner would have no authority to extend the statute of limitations after the expiration thereof. The letter of December 13, 1926, from the appellant to the Commissioner was written after the claims filed in 1924 were denied and after the statute of limitations had expired. The only question, therefore, presented to this court is whether or not the claims for refund filed by appellant on February 29, 1924, and December 12, 1924, were sufficient, under the law, to be the required preliminary for the maintenance of this action, which is based on overpayment of its taxes for 1918 and 1919 on the grounds that its invested capital is a larger amount than was set forth in its return for those years. The trial court held that the original application asked for a special assessment, and, in its application for special assessment, there was no indication that the taxpayer contended that it was entitled to a reduction of its taxes on the ground

that there was certain printing material that should have been added to its invested capital. In other words, the trial court held that this action is based upon a new and inconsistent ground compared to the original application for tax refund, and that for the reason that the original claim for refund did not state the grounds which are the basis for this suit, that no recovery can be had herein.

In the case of Tucker v. Alexander (C. C. A.) 15 F.(2d) 356, 357, the court stated: "Therefore, we think it is a required precedent or limitation that the action shall be upon the same grounds and only such as are presented in the claim. As no ground in this petition is stated in the claim for refund, we think this petition has no standing under the issues tendered by the petition."

In the case of Red Wing Malting Co. v. Willcuts (C. C. A.) 15 F.(2d) 626, 634, 49 A. L. R. 459, the court stated: "The precise ground upon which the refund is demanded must be stated in the application to the Commissioner, and we think, if that is not done, a party cannot base a recovery in the court upon an entirely different and distinct ground from that presented to the Commissioner."

In the case of United States v. Felt & Tarrant Manufacturing Company, 283 U. S. 269, 51 S. Ct. 376, 75 L. Ed. 1025, the Supreme Court had a very similar question presented to it. In that case, the taxpayer filed a claim for refund asking for special assessment as in the instant case. This was denied and it brought suit on the basis that its gross income should be decreased by items of exhaustion or obsolescence of patents. The Supreme Court said on page 271 of 283 U. S., 51 S. Ct. 376, 377, 75 L. Ed. 1025:

"That section provides for a special method of assessment of excess profits taxes in any case where the Secretary of the Treasury is unable satisfactorily to determine the invested capital of the taxpayer. It has no relation to deductions from gross income on account of exhaustion or obsolescence of patents. In support of its claim, which was ultimately allowed in part, respondent prepared and filed a brief, and an oral argument was held in the office of the Commissioner; but neither in its claim for refund, its brief, nor at the hearing, was mention made of the deduction now claimed.

"The filing of a claim or demand as a prerequisite to a suit to recover taxes paid is a familiar provision of the revenue laws, compliance with which may be insisted upon by the defendant, whether the collector or the

United States. Tucker v. Alexander, 275 U. S. 228, 48 S. Ct. 45, 72 L. Ed. 253; Maryland Casualty Co. v. United States, 251 U. S. 342, 353, 354, 40 S. Ct. 155, 64 L. Ed. 297; Kings County Savings Institution v. Blair, 116 U. S. 200, 6 S. Ct. 353, 29 L. Ed. 657; Nichols v. United States, 7 Wall. 122, 130, 19 L. Ed. 125.

"One object of such requirements is to advise the appropriate officials of the demands or claims intended to be asserted, so as to insure an orderly administration of the revenue, Nichols v. United States, supra, page 130 of 7 Wall. [19 L. Ed. 125], a purpose not accomplished with respect to the present demand by the bare declaration in respondent's claim that it was filed 'to protect all possible legal rights of the taxpayer.' The claim for refund which section 1318 [26 USCA § 156] makes prerequisite to suit, obviously relates to the claim which may be asserted by the suit. Hence, quite apart from the provisions of the Regulation, the statute is not satisfied by the filing of a paper which gives no notice of the amount or nature of the claim for which the suit is brought, and refers to no facts upon which it may be founded.

"The Court of Claims, in allowing recovery, relied upon Tucker v. Alexander, supra, and upon the fact that, at the time when respondent filed its return and its claim for refund, the Treasury had consistently refused to allow deductions from gross income for exhaustion of patents. Consequently it held that the filing of a demand which was certain to be refused was a futile and unnecessary act. But in Tucker v. Alexander the right of the government to insist upon compliance with the statutory requirement was emphasized. Only because that right was recognized was it necessary to decide whether it could be waived. The Court held that it could, and that in that case it had been waived by the stipulation of the collector filed in court. Here there was no compliance with the statute, nor was there a waiver of its condition, since the Commissioner had no knowledge of the claim and took no action with respect to it.

"The necessity for filing a claim such as the statute requires is not dispensed with because the claim may be rejected. It is the rejection which makes the suit necessary. An anticipated rejection of the claim, which the statute contemplates, is not a ground for suspending its operation. Even though formal, the condition upon which the consent to suit is given is defined by the words of the statute, and 'they mark the conditions of the claim-

ant's right.' Rock Island [A. & L.] R. R. Co. v. United States, 254 U. S. 141, 143, 41 S. Ct. 55, 56, 65 L. Ed. 188. Compliance may be dispensed with by waiver, as an administrative act, Tucker v. Alexander, supra; but it is not within the judicial province to read out of the statute the requirement of its words, Rand v. United States, 249 U. S. 503, 510, 39 S. Ct. 359, 63 L. Ed. 731."

■ The appellant takes the position that in its original claim for refund, the Commissioner had called to his attention all the facts necessary to justify a reduction in its taxes on the basis of increased capital. However, it seems clear that the reference to the printing equipment presented in the original claim for refund was merely used as an illustration of the inability to determine the values of the invested capital in order to substantiate the right of the claimant to have its taxes assessed under sections 327 and 328 of the Revenue Act of 1918. It was merely incidental. There is no particular similarity between a claim for refund based on a right of special assessment and a claim for refund based on the right to have the invested capital increased. In fact, the appellant took the position, when its claim for refund was originally presented, that the facts regarding its invested capital and value of property paid in for its stock, could not be determined, and for that reason, it insisted that its tax should be assessed as the average tax of representative corporations engaged in a like or similar trade or business. It may be that there is some confusion between the terms "facts" and "grounds" as used with reference to claims for tax refund. But the purpose in setting out facts is to advise the Commissioner of the grounds for tax reduction, and the original claim was predicated solely upon the right of special assessment. Any reference in the claim to the status of its printing equipment was merely referred to in support of the taxpayer's right to special assessment. At least, one object of the requirement to set forth the facts in substantiation of the claim for refund is to advise the Commissioner so that there may be an orderly administration of the Revenue Department. United States v. Felt & Tarrant Mfg. Co., supra. If the appellant had in mind that it was entitled to a tax reduction on account of increased invested capital, there would have been no difficulty whatsoever in setting forth such a statement and asking for a reduction on such specific ground. The only purpose evidenced by appellant in filing its claims was to obtain a special assessment in view of certain ab-

normal conditions and circumstances set forth in considerable detail in its brief in support of its claim. The Commission was asked to allow a special assessment. In view of these circumstances, no other claim was presented. The Commission's attention, before the claim was barred by the statute of limitations, was not called to any other claim for refund.

The court, in the case of Mutual Life Ins. Co. of New York v. United States, 49 F.(2d) 662, 72 Ct. Cl. 204, seems to have had substantially this same question before it. On page 664 of 49 F.(2d), 72 Ct. Cl. 204, it said: "Although the claim of August 2 stated certain facts with reference to the reserve funds at the beginning and end of the taxable year from which the 4 per cent. of the mean of these reserve funds could be determined, they were stated, considered, and acted upon by the commissioner for an entirely different purpose than that upon which the plaintiff now relies. No claim for refund of the nature asserted in this suit was ever made to the commissioner until the application for reconsideration long after he had rejected the claim and after the statute of limitation for filing a claim had expired."

The claim for refund was prepared by the attorneys for appellant with considerable care. Great pains were taken in presenting to the Commissioner a voluminous brief in support of its contention that it was entitled to a special assessment. The Commissioner considered appellant's application for some two years, and then formally denied it. If appellant intended to press a claim for refund before the statute of limitations expired on the grounds that its invested capital should be increased by certain printing equipment, there was no indication of any such intention prior to December 13, 1926. The target at which appellant was aiming was the consent of the Commissioner to have its tax assessed according to sections 327 and 328 of the Revenue Act of 1918. The fact that, in aid of that objective, certain facts appeared that might furnish grounds for a partial refund on an entirely different and inconsistent claim, could hardly be considered a preliminary requirement to a suit for such partial refund. Connell v. Hopkins (D. C.) 43 F. (2d) 773; Lucas v. Pilliod Lumber Co., 281 U. S. 245, 50 S. Ct. 297, 74 L. Ed. 829, 67 A. L. R. 1350; Maas & Waldstein Co. v. United States, 283 U. S. 583, 51 S. Ct. 606, 75 L. Ed. 1285.

In accordance with the views herein expressed, the judgment of the lower court is affirmed.