PAT E. DIPLACIDO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Diplacido v. Commissioner
Docket No. 2568-91
United States Tax Court
T.C. Memo 1993-169; 1993 Tax Ct. Memo LEXIS 176; 65 T.C.M. (CCH) 2438; April 19, 1993, Filed *176 Pat E. DiPlacido, pro se. For respondent: Michael A. Urbanos. GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: By a statutory notice of deficiency, respondent determined a $ 10,081 deficiency in petitioner's 1987 Federal income tax and additions to tax of $ 1,636.75 under section 6651(a), [1] $ 504.05 under section 6653(a)(1)(A), and under section 6653(a)(1)(B), 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment attributable to negligence. The issues we consider are: (1) Whether under the limitations of section 6511(b)(2), made applicable by section 6512(b)(3)(B), petitioner's refund claim is timely; (2) whether petitioner has established the amount of the casualty loss to his residence; and (3) whether petitioner is liable for additions to tax under sections 6651(a), 6653(a)(1)(A) and (B). *177 FINDINGS OF FACT The parties entered into a stipulation of facts, along with exhibits which are incorporated herein by this reference. Petitioner resided in Bloomington, Minnesota, at the time the petition was filed in this case. Respondent, by a notice of deficiency mailed November 16, 1990, determined a deficiency in income tax and additions to tax for petitioner's 1987 taxable year. Respondent used the standard deduction in the computation of the income tax deficiency. Petitioner mailed his 1987 Federal income tax return by certified mail on April 15, 1991. Respondent's Kansas City Service Center received the 1987 return on April 17, 1991. The 1987 return claimed employee business expenses and itemized deductions, including a $ 49,000 casualty loss regarding petitioner's residence. During 1987, petitioner's employer withheld $ 3,534.86, as income tax withholding, from petitioner's wages. The parties have reached agreement with respect to all claimed deductions, except the $ 49,000 casualty loss claimed in connection with petitioner's residence. Casualty Loss
Petitioner purchased his residence around 1977 for about $ 85,000. Shortly after purchase, he made about *178 $ 2,000 in improvements to the residence. During the summer of 1987, petitioner's residence was damaged by a heavy rain and wind storm. The flooding caused expansion and contraction of the residence. The damage was structural in nature and resulted in structural weaknesses, including cracking and subsequent foundation leakage. The walls, foundation, landscaping, and garage were damaged. The foundation or footing of the residence became "unstable and unsettled". As a result, the house settled and sank about 3 to 5 inches. Due to the settlement and cracking in the foundation, water regularly seeped into the basement causing accumulation of 3 to 5 feet of standing water. Petitioner's area was designated a disaster area by the President of the United States which enabled him to receive certain relief. In connection with the storm damage, petitioner was granted a $ 15,800 loan by the U.S. Small Business Administration. Petitioner qualified for a loan of up to $ 50,000, but existing encumbrances on the realty caused limitations on the loan amount. About 2 years prior to the storm damage, when petitioner had considered selling his residence, it was valued at $ 142,000. Petitioner *179 did not obtain estimates immediately before or after the claimed casualty. Subsequent to the damage, petitioner obtained estimates ranging from $ 49,000 to $ 59,000 to repair his residence. Petitioner did not provide specific information concerning the estimates. During 1987, petitioner paid $ 7,565 for repairs to his residence. For purposes of reporting the 1987 casualty loss to his residence, petitioner used the lesser of the repair estimates ($ 49,000), as his estimate of the loss. Respondent agrees a casualty loss occurred, but does not agree that petitioner has shown the amount of the casualty loss on his residence. Respondent has agreed that petitioner was entitled to a casualty loss of $ 10,300 for personal property and $ 2,375 for an automobile. Claim for Refund
Beginning with his 1981 taxable year, petitioner has filed his returns on or about 3 years from the normal due date. Petitioner mailed his 1981 through 1987 Federal income tax returns to respondent, as follows: Tax Year
Date Due
Date Mailed
1981
April 15, 1982
March 25, 1985
1982
April 15, 1983
April 11, 1986
1983
April 15, 1984
April 10, 1987
1984
April 15, 1985
March 15, 1988
1985
April 15, 1986
April 15, 1989
1986
April 15, 1987
April 12, 1990
1987
April 15, 1988
April 15, 1991
*180 Petitioner filed his return about 3 years after the normal due date because of circumstances surrounding respondent's audit of petitioner's 1980 return. Because the 1980 audit would resolve how certain employee expenses should be claimed, petitioner delayed the filing of post-1980 returns until the completion of the 1980 audit. At the completion of the 1980 audit, petitioner apparently continued his 3-year lag filing pattern. Petitioner believed that he should perpetuate the 3-year lag and he filed one return each year, but that return was for a taxable year 3 years prior to the one for which a return would normally be filed at the time. Petitioner's belief was founded on his erroneous interpretation that if he filed 3 years' returns in one year he would be subjected to a bunching of income in the catch-up year. OPINION Casualty Loss
Under section 165(a) deductions are allowable for losses not compensated for by insurance, or otherwise. In the case of an individual, section 165(c)(3), subject to the limitations of section 165(h), permits a nonbusiness casualty loss for damage from a storm. Section 165(h) sets forth dollar and percentage limitations or thresholds for *181 claiming casualty losses. Section 1.165-7(a)(2)(i) and (ii), Income Tax Regs., provides guides to be used in determining the amount of the casualty loss. Section 1.165-7(a)(2)(i), Income Tax Regs., contains a method using a comparison of the fair market values immediately before and after the casualty to arrive at the amount of the loss in value. Section 1.165-7(a)(2)(ii), Income Tax Regs., provides that the cost of repairs is acceptable as evidence of the loss of value if the taxpayer shows that: (a) the repairs are necessary to restore the property to its condition immediately before the casualty, (b) the amount spent for such repairs is not excessive, (c) the repairs do not care for more than the damage suffered, and (d) the value of the property after the repairs does not as a result of the repairs exceed the value of the property immediately before the casualty.
There is no question about flood damage being classified as a casualty and there is also no dispute here about whether petitioner's residence was damaged by the storm. The sole question we consider is the amount of the loss petitioner is entitled to claim. The burden of proving that amount rests with petitioner. *182 Rule 142(a); Helvering v. Owens, 305 U.S. 468 (1939); Millsap v. Commissioner, 46 T.C. 751, 759 (1966), affd. 387 F.2d 420 (8th Cir. 1968). The opinion of landowners as to the value of their property is admissible in evidence without further qualification because of the owners' special relationship to that property. District of Columbia Redevelopment Land Agency v. 13 Parcels of Land, 534 F.2d 337, 339-340 (D.C. Cir. 1976); Klapmeier v. Telecheck International, Inc., 482 F.2d 247 (8th Cir. 1973); Harmon v. Commissioner, 13 T.C. 373 (1949); see also Fed. R. Evid. 701. Petitioner testified that the fair market value of his house was $ 142,000 immediately prior to, and $ 93,000 immediately after, the flood damage. Petitioner derived the predamage value from a real estate valuation that he had received about 2 years prior to the damage. Although the $ 142,000 valuation may have fluctuated during the 2 years, petitioner, as owner, believed that amount to be the fair market value. Petitioner determined *183 the $ 93,000 value subsequent to the flood damage by reducing the $ 142,000 value by the lowest cost of repair to the damage ($ 49,000). Respondent does not vigorously argue that the predamage valuation would not be appropriate to establish that fair market value. Respondent recognizes that the time lapse could account for variation in the actual fair market value at the time of the flood. Respondent's argument instead focuses upon the postdamage value. Respondent points out that petitioner paid only $ 7,565 during 1987 for actual repair of the residence. Although we take that factor into consideration, it is not determinative of the postdamage value. Obviously, petitioner may have been willing to make only minimal repairs to make the house usable, leaving some portion of the repairs for a later time. At the time of the flood damage, petitioner had lived in the residence for about 10 years and he was in a position to ascertain the value of his residence. We found petitioner's uncontradicted testimony to be credible, and we accept the $ 142,000 predamage value because of the combination of petitioner's ownership knowledge and the prior valuation. Regarding the postdamage value, *184 however, no direct correlation has been shown here to the estimated cost of repair and the reduction in value. The cost of repairs could be less, more, or the same as the reduction in value caused by the storm damage. Even though petitioner qualified for a loan of up to $ 50,000, we cannot tell from this record how that amount was determined. We note that petitioner also had damage to personal property and his automobile, which respondent has agreed amounted to about $ 12,500 in the aggregate for 1987. Taking all of the foregoing into consideration, we find that petitioner's residence was damaged within the meaning of section 165(c)(3) in the amount of $ 24,500 without considering any limitations or other requirements of section 165(h). Claim for Refund
At the time the notice of deficiency in this case was mailed to petitioner, he had not filed his 1987 Federal income tax return. Also at that time, $ 3,534.86 had been withheld by petitioner's employer from his wages during the 1987 taxable year. On April 15, 1991, subsequent to the issuance of the notice of deficiency, petitioner mailed his 1987 return, which was received by respondent's service center on April 17, 1991. *185 [2] In the notice of deficiency, income about which respondent had information was included and petitioner was permitted the maximum standard deduction. That approach resulted in a $ 10,081 income tax deficiency. In the 1987 return, petitioner claimed various deductions which the parties considered and, for the most part, settled prior to trial. Taking into consideration the amounts settled and the amount of the casualty to the residence decided here, it is possible that an overpayment of some portion of the $ 3,534.86 withholding credit could result. The question in controversy is whether petitioner's claim for credit or refund is timely under the limitations of section 6511(b)(2). Section 6512(b)(1) authorizes this Court to determine the amount of an overpayment and requires the overpayment determined to be refunded or credited to the taxpayer, subject to the limitations imposed by section 6512(b)(3). [3] Pursuant to section 6512(b)(3), *186 no amount may be so refunded or credited unless this Court determines as part of its decision that such portion was paid by the taxpayer at one of the three times set forth in the three subparagraphs of that section. The only one of the three subparagraphs applicable in this case is section 6512(b)(3)(B) which provides: (3) Limit on amount of credit or refund. -- No such credit or refund shall be allowed or made of any portion of the tax unless the Tax Court determines as part of its decision that such portion was paid -- * * * (B) within the period which would be applicable under section 6511(b)(2), (c), or (d), if on the date of the mailing of the notice of deficiency a claim had been filed (whether or not filed) stating the grounds upon which the Tax Court finds that there is an overpayment * * *
*187 No formal claim was filed in this case prior to the issuance of the notice of deficiency. Pursuant to these provisions a taxpayer is deemed to have filed a claim for credit or refund on the date the notice of deficiency was mailed. Of the three applicable periods referred to in section 6512(b)(3)(B), the only one relevant in this case is section 6511(b)(2). Accordingly, petitioner must show that the tax was paid within the period described under section 6511(b)(2). That section, like section 6512(b)(3), limits the amount of any credit or refund. Section 6511(b)(2) contains what are commonly referred to as "look-back" rules and provides in relevant part: (A) LIMIT WHERE CLAIM FILED WITHIN 3-YEAR PERIOD. -- If the claim was filed by the taxpayer during the 3-year period prescribed in subsection (a), the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return. * * * (B) LIMIT WHERE CLAIM NOT FILED WITHIN 3-YEAR PERIOD. -- If the claim was not filed within such 3-year period, the amount of the credit or refund *188 shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim.
Where, as here, the taxpayer has failed to file a tax return prior to the time the notice of deficiency was mailed, the 2-year limitations period of subparagraph (B) of section 6511(b)(2) rather than the 3-year limitations period of subparagraph (A) applies. Allen v. Commissioner, 99 T.C.     (1992) (slip op. at 7-8); Galuska v. Commissioner, 98 T.C. 661 (1992); Berry v. Commissioner, 97 T.C. 339 (1991); White v. Commissioner, 72 T.C. 1126 (1979). [4] This is so regardless of whether a claim or return is filed subsequent to the date the notice of deficiency is mailed. See Allen v. Commissioner, supra.[5] Therefore, the amount of credit or refund is limited to the amount of tax petitioner paid during the 2 years immediately preceding the "filing" of the claim. *189 For purposes of our consideration, section 6513(b)(1) provides that tax withheld during any calendar year is deemed paid on April 15, of the following year. Accordingly, petitioner's prepaid tax credit was deemed paid under section 6513(b)(1) on April 15, 1988. It then follows, that petitioner must have made a claim on or before April 15, 1990, to be entitled to a refund. As previously discussed, petitioner's claim for refund is deemed to have been filed on November 16, 1990, the date the notice of deficiency was mailed. Accordingly, petitioner's claim is limited under section 6512(b)(3)(B) to the amount of tax paid within the preceding 2-year period or zero. Petitioner also makes the argument that respondent's agents advised him to file all returns, after his 1980 return, 3 years late to avoid the bunching of income. Even if one of respondent's employees had given that advice to petitioner, that would not have been sufficient to change the outcome here. That argument raises the question of estoppel. In situations where one of the Commissioner's representatives provides erroneous advice based upon a mistaken interpretation of the law, the doctrine of equitable estoppel does *190 not bar the Commissioner from determining or arguing the correct position in the notice of deficiency or at trial. Automobile Club v. Commissioner, 353 U.S. 180, 183 (1957); Neri v. Commissioner, 54 T.C. 767, 771-772 (1970). Petitioner also argues that there exists in this case an informal notice of a claim for a refund. In this regard, petitioner relies on Radin v. United States, 702 F. Supp. 38 (D. Conn. 1988). In that case, the District Court decided that the taxpayer's "correspondence with the IRS * * * constituted an informal claim for a credit or refund". Id. at 40. [6] The general rule expressed was that "Ordinarily, letters do not qualify as a claim for refund or credit". Id. (citing Maas & Waldstein Co. v. United States, 283 U.S. 583 (1931)). A footnote reference was also made to the requirements under section 301.6402-2(b)(1), Proced. & Admin. Regs., that the taxpayer set forth in detail each ground upon which a refund is claimed and facts sufficient to apprise the Commissioner of the basis of the claim, along *191 with other formalities. The Radin court focused on the idea that the important common factor in informal claim cases was that the Commissioner was fully apprised of the taxpayer's intention to subsequently file a claim. It was also noted that each case was dependent upon its facts and circumstances as to whether an informal claim existed. In this case, petitioner has not shown that, before respondent mailed the notice of deficiency, an informal claim existed or that respondent was apprised of petitioner's intention to subsequently file a claim. Indeed, respondent issued a notice of deficiency prior to the time that petitioner ever referenced *192 his claim in his untimely filed 1987 return. Said return was mailed some 5 months after respondent mailed and petitioner received the notice of deficiency for the same year. Having decided that no credit or refund can be determined for petitioner, we believe that this opinion will result in no deficiency or underpayment due for petitioner's 1987 tax year and, accordingly, the additions to tax may not be applicable. If the parties' Rule 155 computation should result in any deficiency or underpayment which could trigger the additions to tax determined by respondent, further consideration will be given to those additions which are affected. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year under consideration, and all Rule references are to the Tax Court's Rules of Practice and Procedure, unless otherwise indicated.↩
2. Apr. 15 and Apr. 17 fell on a Monday and Wednesday in 1991, respectively.↩
3. Sec. 6512(b)(3), formerly sec. 6512(b)(2), was redesignated by the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647 (TAMRA), sec. 6244(a), 102 Stat. 3750, effective for overpayments determined by the Tax Court which had not been refunded on the 90th day after Nov. 10, 1988.↩
4. See also Sumiel v. Commissioner, T.C. Memo. 1993-104↩.
5. See also Durham v. Commissioner, T.C. Memo. 1993-21; Hall v. Commissioner, T.C. Memo. 1989-651; Nason v. Commissioner, T.C. Memo. 1984-534↩.
6. The issue in Radin v. United States, 702 F. Supp. 38↩ (D. Conn. 1988) was a threshold question of whether evidence of an informal claim should be received by the court or whether the taxpayer's complaint should be dismissed. After reviewing several cases where "informal claims" were permitted, the District Court decided not to dismiss.