BLADINE, Collector of Internal Revenue, v. CHICAGO JOINT STOCK LAND BANK, and three other cases.

Nos. 9479–9482.

Circuit Court of Appeals, Eighth Circuit.

Jan. 28, 1933.

Frank F. Wilson, Asst. U. S. Atty., of Mount Ayr, Iowa (Ray C. Fountain, Asst. U. S. Atty., of Des Moines, Iowa, on the brief), for appellant.

Stuart S. Ball, of Des Moines, Iowa (Thomas Watters, Jr., and Parrish, Cohen, Guthrie & Watters, all of Des Moines, Iowa, on the brief), for appellees.

Before KENYON, GARDNER, and SANBORN, Circuit Judges.

SANBORN, Circuit Judge.

These appeals are the outcome of the trial of four actions at law for the recovery of money paid to the collector of internal revenue for the district of Iowa by the appellees on June 12, 1926. The actions were consolidated for trial, and were tried by the court without a jury. Each of the appellees recovered judgment.

The facts out of which these controversies arise are not in dispute, and, without going into unnecessary detail, are substantially as follows:

Noah Williams owned a large amount of Iowa farm land at the time of his death in 1918. An estate tax return showed a tax liability of $118,117. This was paid by the estate. April 3, 1920, a deficiency assessment of $52,195.83 was proposed. A claim for the abatement of $80,421.31 of the tax was filed May 6, 1920, and rejected August 4, 1920. On November 17, 1920, the estate applied for a rehearing on the claim, which resulted in a reduction of the additional tax liability to $6,096.58. Notices of tax liens were filed in July, 1921, in the counties where the lands were located. The $6,096.58 was paid by the estate. Certificates of discharge of the tax liens were filed in December, 1921. Subsequently, a reinvestigation and re-examination resulted in a determination that the additional tax liability of the estate was $11,-870.54, instead of $6,096.58, which left an unpaid balance of $5,773.96. The collector was so advised by the Commissioner, and in June, 1924, a notice of tax lien was filed in the counties where the lands of the estate were located. The heirs of Noah Williams, between March 25, 1921, and January 11, 1924, had borrowed money from each of the appellees, and had given mortgages upon the inherited lands to secure such loans. These mortgages were foreclosed as defaults occurred, the lands were bid in by the mortgagees, and sheriffs' deeds were issued to them; so that on June 12, 1926, each of the appellees owned lands which previously had belonged to Noah Williams. On that date, a Saturday, the collector notified the appellees that on the following Monday, unless the unpaid balance of estate tax and interest was paid, he would distrain and sell the lands acquired under their mortgages from the heirs of Noah Williams, for the purpose of satisfying the claim of the government. Counsel for the appellees, in conference with him, denied that the government had any lien upon these lands or any claim against the appellees, or any right to distrain and sell. In order to avoid having the lands posted for sale, to avoid clouds upon their title, and to avoid the complications which might make the lands in their hands unsalable until their rights were determined, the appellees finally paid the tax under protest. The total sum paid was $9,288.43, and each appellee paid such proportion of that sum as the amount of the mortgages it had held on the Williams lands bore to the total amount of all the mortgages which had been held by the appellees on such lands. Subsequently a claim for refund was filed, and, upon the claim being rejected, these actions were brought.

It is conceded that the government had in fact no lien upon these lands in the hands of the appellees at the time the money was demanded and paid, and that the appellees were in no way liable for the unpaid balance of the estate tax. The only relation which the appellees bore to the tax was that they had acquired lands which once belonged to the estate of Noah Williams, and upon which lands the government at one time had a lien which it had released. It therefore appears that the collector had exacted from the appellees $9,288.43, for which they were in no way responsible, by threatening to distrain and sell lands belonging to them, upon which the government had no lien, in order to satisfy a tax due from their predecessors in title.

That the government, as a matter of common honesty, upon discovering what had been done, should have returned the moneys so collected, without requiring the appellees to do anything, seems clear. But the collector now contends that no proper claim for refund was filed by the appellees, and that section 611 of the Revenue Act of 1928, 45 Stat. 875 (26 USCA § 2611), precludes a refund of the money unlawfully exacted.

There is also a suggestion that the United States should have been made a party to these actions.

The right of a person from whom money has wrongfully been taken by a collector of internal revenue to sue the collector without

joining the government, is recognized by statute: U. S. Code, title 26, § 149, 45 Stat. 996 (26 USCA § 149), which provides for the repayment to a collector of such sums as may be recovered against him in any court; U. S. Code, title 28, § 485 (Rev. St. § 771 [28 USCA § 485]), which makes it the duty of the District Attorney to represent the collector in any suit brought against him; and U. S. Code, title 28, § 41 (20), 43 Stat. 972 (28 USCA § 41 [20]), which gives to the Court of Claims jurisdiction of suits for money wrongfully collected under the internal revenue laws if the Collector is dead at the time such suit is commenced. The right has also been recognized by the Supreme Court of the United States. United States v. Emery, Bird, Thayer, Realty Co., 237 U. S. 28, 31, 35 S. Ct. 499, 59 L. Ed. 825; Sage v. United States, 250 U. S. 33, 39 S. Ct. 415, 63 L. Ed. 828; Smietanka v. Indiana Steel Co., 257 U. S. 1, 4, 5, 42 S. Ct. 1, 66 L. Ed. 99; Graham & Foster v. Goodcell, 282 U. S. 409, 431, 51 S. Ct. 186, 75 L. Ed. 415.

There are, therefore, but two main questions to be determined:

(1) Did the appellees file a sufficient claim for refund?

(2) Does section 611 of the Revenue Act of 1928, 45 Stat. 875 (26 USCA § 2611), prevent the recovery by the appellees of their money?

1. U. S. Code, title 26, § 149, 45 Stat. 996 (26 USCA § 149) authorizes the Commissioner of Internal Revenue, subject to regulations prescribed by the Secretary of the Treasury, to pay back all taxes wrongfully collected, except as otherwise provided by law.

U. S. Code, Title 26, § 156, 26 USCA § 156 (See U. S. C., Supp. VI, title 26, § 1672) provides that "no suit or proceeding shall be maintained in any court for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof; but such suit or proceeding may be maintained, whether or not such tax, penalty, or sum has been paid under protest or duress."

Only one claim for refund of the amount paid by the appellees was filed. It was made out on form 843, as directed by article 99 of Regulations 70. The blank space in that form for "name of taxpayer" was filled in, "Estate of Noah Williams." The "amount to be refunded" was stated to be $9,288.44. The grounds for refund were: (1) That the five-year statutory period had expired prior to the assessment and collection of the tax; and (2) that the tax was otherwise illegally collected, through coercion of transferees and mortgagees of the lands of the estate. After the statement of the grounds for the claim for refund appears this language: "See detailed statement attached hereto and made a part hereof." The form itself directed "(Attach additional sheets if necessary)," and was signed "Estate of Noah Williams, by W. R. C. Kendrick, Attorney in Fact." The detailed statement attached to the form set forth all the facts with reference to the tax and its payment. It showed how and when the appellees acquired their property from the heirs of Noah Williams. It set forth that the government had at one time held a lien upon these lands and had discharged it. It stated the facts constituting the duress and coercion exercised upon the appellees. It showed the specific amounts paid by each of the appellees. It pointed out the invalidity of the liens subsequently attempted to be acquired by the government for that portion of the estate tax remaining unpaid. It concluded: "Therefore, this claim for refund of the taxes so paid, with interest is made, and it is respectfully requested that the claimants be granted a conference in the premises."

The form was not well adapted to the claim made, no doubt because it was not contemplated that persons who were not assessed would be compelled to seek refunds of taxes imposed upon others. The form called for the name and signature of the taxpayer.

U. S. Code, title 26, § 1262, 26 USCA § 1262 [U. S. C. Supplement VI, title 26, § 1696 (14)], 44 Stat. 9, defines taxpayer as "any person subject to a tax imposed by this title." The tax in question here was not imposed upon the appellees, but was a tax imposed upon the estate of Noah Williams. None of the appellees were taxpayers within this definition. They were merely persons unlawfully compelled to pay a tax which had been imposed upon another. It would, no doubt, have been better if the appellees had included no claim that the tax against the estate was uncollectible from the estate, and if they had made it clearer that the money to be refunded was not to be refunded to or through the estate. However, it appears from the claim that the entire amount of the

tax was paid by the appellees, and that no part of it was paid by the estate. No one intelligently reading the claim could be in any doubt that what was being asked was the refund to each of the appellees of the amount which it had paid, and the exact amount which each had paid was stated in the claim. If each of the appellees had filed a claim for refund, the Commissioner would have had before him exactly the same information as was contained in the single claim.

It seems to us unimportant whether the appellees made a joint claim in the name of the taxpayer or separate claims each in his own right, so long as the facts and grounds upon which the claims were based and the persons who were entitled to the refunds were clearly stated.

It is a little difficult to regard these cases as suits for the recovery of a tax. They are really suits to recover money wrongfully exacted by the collector, under color of his office, from persons against whom no tax was assessed.

■ U. S. Code, title 26, § 156, 26 USCA § 156 (see U. S. C. Supp. VI, title 26, § 1672), however, makes no express distinction between an illegal tax and a sum wrongfully collected; and in Sage v. United States, supra, page 36 of 250 U. S., 39 S. Ct. 415, 416, the Supreme Court uses this broad language with reference to suits against a collector, "It is true that the statutes modify the common law liability for money wrongfully collected by duress so far as to require a preliminary appeal to the Commissioner of Internal Revenue before bringing a suit"; so the contention of the collector, that the appellees were required to show the same meticulous compliance with the provisions of the statute and regulations relating to a claim for refund as any taxpayer, seems justified. That a strict compliance is required, if not waived, as a prerequisite to suits by taxpayers, is well settled. Maas & Waldstein Co. v. United States, 283 U. S. 583, 51 S. Ct. 606, 75 L. Ed. 1285; Taber v. United States (C. C. A. 8) 59 F.(2d) 568. See, also, United States v. Felt & Tarrant Mfg. Co., 283 U. S. 269, 51 S. Ct. 376, 75 L. Ed. 1025; United States v. Henry Prentiss & Co., 53 S. Ct. 283, 77 L. Ed. ——, opinion filed January 9, 1933; United States v. Factors & Finance Co., 53 S. Ct. 287, 77 L. Ed. ——, opinion filed January 9, 1933; Tucker v. Alexander (C. C. A. 8), 15 F.(2d) 356; Red Wing Malting Co. v. Willcuts (C. C. A. 8) 15 F.(2d) 626, 49 A. L. R. 459; J. P. Stevens Engraving Co. v. United States (C. C. A. 5) 53 F.(2d) 1. We

have, however, no doubt that the claim for refund with which we are concerned complied with the law and gave to the Commissioner all the information to which he was entitled, and all that it was necessary for him to have in order to satisfy himself that the appellees were making claims for the recovery of sums wrongfully exacted by the collector of internal revenue, and the precise grounds thereof.

In the case of United States v. Memphis Oil Co., 53 S. Ct. 278, 281, 77 L. Ed. ——, opinion filed January 9, 1933, the Supreme Court, speaking through Mr. Justice Cardozo, said: "The line of division must be kept a sharp one between the function of a statute requiring the presentation of a claim within a given period of time, and the function of a regulation making provision as to form. The function of the statute, like that of limitations generally, is to give protection against stale demands. The function of the regulation is to facilitate research. The Commissioner has the remedy in his own hands if the claim as presented is so indefinite as to cause embarrassment to him or to others in his Bureau. He may disallow the claim promptly for a departure from the rule."

Here, there was no suggestion by the Commissioner that the claim was defective, or that it appeared that the taxpayer was seeking to recover a tax for his own benefit because of a payment made by others under duress and coercion, to which they alone would be entitled. The claim furnished ample facility for research.

■ 2. Section 607 of the Revenue Act of 1928 (45 Stat. 874 [26 USCA § 2607]) provides: "Any tax * * * assessed or paid * * * after the expiration of the period of limitation properly applicable thereto shall be considered an overpayment and shall be credited or refunded to the taxpayer if claim therefor is filed within the period of limitation for filing such claim."

Section 611 of the same act (45 Stat. 875 [26 USCA § 2611]) provides: "If any internal-revenue tax * * * was, within the period of limitation properly applicable thereto, assessed prior to June 2, 1924, and if a claim in abatement was filed, with or without bond, and if the collection of any part thereof was stayed, then the payment of such part * * * shall not be considered as an overpayment under the provisions of section 607 [2607], relating to payments made after the expiration of the period of limitation on assessment and collection."

The purpose of section 611 is fully ex-

plained in the case of Graham & Foster v. Goodcell, 282 U. S. 409, 51 S. Ct. 186, 75 L. Ed. 415, supra. It appears that prior to the decision of the Supreme Court in Bowers v. New York & Albany Lighterage Co., 273 U. S. 346, 47 S. Ct. 389, 71 L. Ed. 676, the Treasury Department had ruled that the period of limitation for collecting taxes, fixed by section 250 (d) of the Revenue Act of 1921, 42 Stat. 227, 265, did not apply to the collection of a tax by distraint. That case held the section did apply to such collections. The result was that many suits were brought to recover taxes paid after the period of limitation had expired, in cases where claims in abatement had been filed, and proceedings for collection had been thus delayed by the taxpayers themselves until the claims had been acted upon. It was the purpose of Congress that payments made under those circumstances should not be refunded. In the Goodcell Case, the Supreme Court sustained the validity of the section, but, in doing so, said (page 429 of 282 U. S., 51 S. Ct. 186, 194): "It is apparent, as the result of the decisions, that a distinction is made between a bare attempt of the legislature retroactively to create liabilities for transactions which, fully consummated in the past, are deemed to leave no ground for legislative intervention, and the case of a curative statute aptly designed to remedy mistakes and defects in the administration of government where the remedy can be applied without injustice. Where the asserted vested right, not being linked to any substantial equity, arises from the mistake of officers purporting to administer the law in the name of the Government, the legislature is not prevented from curing the defect in administration simply because the effect may be to destroy causes of action which would otherwise exist. The power is necessary that government may not be defeated by omissions or inaccuracies in the exercise of functions necessary to its administration.' Charlotte Harbor & Northern Railway Company v. Welles, supra [260 U. S., 8, 11, 12, 43 S. Ct. 3, 67 L. Ed. 100]. This principle covers the present case. The petitioners had been indebted to the Government for the amount which was subsequently collected. They had asked for a review of the assessment and collection was postponed. The Treasury Department had mistakenly assumed that the statute of limitations did not apply to distraint proceedings and before the mistake was discovered the period of limitation had expired. The Congress could correct this defect in administration without violating any substantial equity, and this was accomplished by section 611 of the Revenue Act of 1928 (26 USCA § 2611)."

The difference between the situation which is dealt with by section 611 and that with which we are confronted is obvious. In section 611, Congress was dealing with the causes of action of taxpayers who had been indebted to the government for the amounts which they had paid, and who had, by their own activity, delayed their payments until after the expiration of the period of limitation applicable thereto, and set up in section 607. The Supreme Court was therefore justified in saying that section 611, denying to such taxpayers the benefit of the period of limitation in section 607, did not violate any substantial equity which was theirs, even where the payment of the tax was involuntary. To apply section 611 to our situation would not only cut off a substantial equity of the appellees, but would prevent them from recovering money to which the government was in no way entitled, and which it cannot, with decency, excuse the retention of.

The Supreme Court also said in the Goodcell Case (page 431 of 282 U. S., 51 S. Ct. 186, 194): "If the Congress did not have the authority to deal by a curative statute with the taxpayers' asserted substantive right, in the circumstances described, it could not be concluded that the Congress could accomplish the same result by denying to the taxpayers all remedy both as against the United States and also as against the one who committed the wrong. See Brinkerhoff-Faris Trust & Savings Co. v. Hill, 281 U. S. 673, 679, 680, 50 S. Ct. 451, 74 L. Ed. 1107."

Thus a decision that section 611 prevented the appellees from recovering the money wrongfully exacted from them by the collector would be equivalent to denying them any remedy against either the United States or the collector, and taking their property without due process of law in violation of the Fourteenth Amendment. See, also, Ward v. Board of County Commissioners of Love County, 253 U. S. 17, 40 S. Ct. 419, 64 L. Ed. 751; Carpenter v. Shaw, 280 U. S. 363, 50 S. Ct. 121, 74 L. Ed. 478. Had the taxpayer paid this tax and then sought to recover it, the situation would be entirely different. Certainly, one who is compelled to pay the tax of another by duress is not deprived of all remedy merely because the tax which was paid could not have been recovered under the provisions of section 611 if paid by the person upon whom it was imposed.

"It is a well-settled rule that 'money got through imposition' may be recovered back;

and, as this court has said on several occasions, 'the obligation to do justice rests upon all persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation.' Marsh v. Fulton County, 10 Wall. 676, 684 (19 L. Ed. 1040); City of Louisiana v. Wood, 102 U. S. 294, 298, 299, 26 L. Ed. 153; Chapman v. County of Douglas, 107 U. S. 348, 355, 2 S. Ct. 62, 27 L. Ed. 378. To say that the county could collect these unlawful taxes by coercive means and not incur any obligation to pay them back is nothing short of saying that it could take or appropriate the property of these Indian allottees arbitrarily and without due process of law. Of course this would be in contravention of the Fourteenth Amendment, which binds the county as an agency of the state." Ward v. Board of County Commissioners of Love County, 253 U. S. 17, 24, 40 S. Ct. 419, 422, 64 L. Ed. 751, supra.

The judgment was right and is affirmed.