Paul PIPOLA and Julia Pipola, Plaintiffs-Appellants,

v.

Mae CHICCO and Yorkville Savings and Loan Association, Defendants,

and

United States of America, Defendant-Appellee.

No. 67, Docket 25649.

United States Court of Appeals Second Circuit.

Argued Dec. 9, 1959.

Decided Jan. 21, 1960.

**910**

Herman S. Axelrod, New York City (Axelrod & Axelrod, New York City, on the brief), Maitland M. Axelrod, New York City, of counsel, for appellants.

Lola S. Lea, New York City (S. Hazard Gillespie, Jr., U. S. Atty. for the Southern District of New York, and Joseph M. Field, Asst. U. S. Atty., New York City, on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, and SWAN and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge.

This is an action by purchasers of real estate, pursuant to 28 U.S.C. § 2410(a), set forth below,[1] to cancel a tax lien filed by the government against purchasers' grantor. The principal question is whether plaintiffs can challenge the sufficiency of the evidence that led the Commissioner to make the assessment under-

lying the tax lien. Judge Weinfeld, in a thorough opinion, held they may not, and we agree. A subsidiary issue concerns the amount by which priority over the tax lien should be recognized because a mortgage senior to the lien was paid off when title to the plaintiffs closed. As to this we think the District Judge should have allowed the plaintiffs interest on the amount so paid.

Mae Chicco acquired title to a one-story house in the Bronx in 1951. In 1952 she executed a mortgage on the house to secure a $10,000 loan from North New York Savings and Loan Association; this was duly recorded. In August, 1953, New York City police raided the house, arrested Chicco and two men, and charged all three with operating a policy bank in violation of New York Penal Law, § 974. The men pleaded guilty but the charge against Chicco was dismissed. Early in 1954, after investigation, the Commissioner made an assessment against Chicco for $14,287.44 for the tax on wagers imposed by § 3285 of the 1939 Internal Revenue Code, 26 U.S.C. § 3285, and penalties thereon and for $62.50 for the occupational tax imposed by § 3290, 26 U.S.C. § 3290,[2] and penalties thereon. Chicco was twice notified of each of the two assessments. The taxes not having been paid, the District Director of Internal Revenue on June 28, 1954, caused a Federal tax lien to be duly filed against the property in the Register's Office, Bronx County, pursuant to § 3672, 26 U.S.C. § 3672.

On April 28, 1955, Chicco delivered a deed of the property to the plaintiffs for a consideration of $18,000. The examiners for the title company failed to find the notice of the United States tax lien. A balance of $8,573.49 was then due on the North New York mortgage. At the closing plaintiffs caused this to be paid,

---

1. "Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter, to quiet

title to or for the foreclosure of a mortgage or other lien upon real or personal property on which the United States has or claims a mortgage or other lien."

2. All section references are to the 1939 Internal Revenue Code unless otherwise stated.

and the mortgage was satisfied. The funds for this payment came from a $12,000 loan by Yorkville Savings and Loan Association secured by a new mortgage executed by plaintiffs. The abstract company that searched title for Yorkville likewise missed the tax lien.

Also in April, 1955, the government filed an information in the Southern District of New York charging Chicco and the two men with wilful failure to register as required by § 3291, 26 U.S.C. § 3291, and to pay the taxes imposed by §§ 3285 and 3290. The two men pleaded guilty. A *nolle prosequi* was entered as to Chicco. The statement of the Assistant U. S. Attorney proposing the *nolle prosequi* stated that the evidence available to the government showed that title to the house in which the two men conducted part of their policy operation was in the name of Chicco, "a girl friend" of one of them, "and was occupied by her"; that the government had "no additional evidence to show that she was engaged in the business of accepting wagers as charged in the information"; and that "Even if the fact of her participation in the business could be inferred from her record ownership and occupation of the house, the evidence is insufficient to show her wilful failure to pay the required taxes and register as is charged in the information." Some months later Chicco disappeared; her present whereabouts are unknown.

In 1957 plaintiffs brought this action in the Supreme Court of New York, Bronx County, against Chicco, the United States, which had been joined under 28 U.S.C. § 2410, and Yorkville, to quiet title to the property by cancelling the tax lien. The ground asserted for this was that the evidence before the Commissioner as to Chicco's participation in the wagering operations was insufficient to warrant the assessment against her. The government removed to the District Court for the Southern District, 28 U.S. C. § 1444. There it answered and counterclaimed for foreclosure of the tax lien. Yorkville also answered and asserted that it was entitled to priority over the tax lien to the extent of the amount owing under the mortgage to North New York at the time of the sale. Chicco defaulted.

Judge Weinfeld held, 169 F.Supp. at page 232, that 28 U.S.C. § 2410(a) "simply provides a waiver of immunity by the United States in foreclosure actions or in suits to quiet title in instances where the Government has, or claims to have, a lien upon or other interest in property" and that in consequence the plaintiffs "cannot challenge the assessment imposed by the Commissioner against their grantor." He said also, 169 F.Supp. at page 234, that "assuming *arguendo* that plaintiffs could maintain a suit to attack the validity of the assessment, they have failed to sustain their claim that the assessment was made without any basis in fact." He thought this because "The investigation made by the Federal agents especially appointed to inquire into the activities of Chicco and her associates fully warranted the inference that they were engaged as joint venturers within the meaning of the wagering tax provisions." We do not reach the latter question since we affirm Judge Weinfeld's holding that plaintiffs may not go into the merits of the assessment against their grantor.[3]

The government's argument that the plaintiffs may not question the assessment on the merits proceeds from the premise that Chicco could not have done

3. The scope of the inquiry into the validity of tax liens permitted in an action under 28 U.S.C. § 2410 does not appear to have been previously determined by a Court of Appeals. Language in two District Court cases cited by the government, Commercial Credit Corporation v. Schwartz, D.C.E.D.Ark.1954, 126 F.Supp. 728 and Gordon v. Bank of America National Trust and Savings Association, D.C.N.D.Cal.1957, 150 F.Supp. 772, is consistent with Judge Weinfeld's conclusion and a statement in United States v. Morrison, 5 Cir., 1957, 247 F.2d 285, 290, hereafter discussed, may not be; but none of these cases required decision on the precise issue here presented.

so if the government had sought to collect the tax assessed against her by any of the various methods provided by the Revenue Act including an action under § 3678, 26 U.S.C. § 3678, to enforce the tax lien. Starting from this premise the government argues that 28 U.S.C. § 2410 simply waived the government's immunity to suit to the extent there specified and did not give a plaintiff in such a suit, whether the taxpayer or another, greater substantive rights than the taxpayer would have had in a proceeding brought by the government to collect the tax. Plaintiffs question the government's premise, and they contend that in any event the conclusion would not follow since, as they argue, a construction of 28 U.S.C. § 2410 that would prevent inquiry into the merits of a tax assessment would deprive the section of its intended purpose as applied to tax liens. Alternatively, they contend that even if 28 U.S.C. § 2410 does not in all cases have the effect claimed, they are entitled to relief here under the same equitable principle that was recognized in Miller v. Standard Nut Margarine Co., 1932, 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 to justify an exception to the statute prohibiting actions to enjoin the assessment or collection of tax, § 3653 of the 1939 Code.

The premise of the government's argument receives its most powerful support from Bull v. United States, 1935, 295 U.S. 247, 259–261, 55 S.Ct. 695, 699, 79 L.Ed. 1421. After a review of the practical considerations that justify the sovereign in resorting "to more drastic means of collection" of taxes than of other debts, Mr. Justice Roberts stated that in taxation "the assessment supersedes the pleading, proof, and judgment necessary in an action at law, and has the force of such a judgment," and that in taxation "the usual procedure for the recovery of debts is reversed" and "payment precedes defense." The government says that if the assessment against Chicco was thus a "judgment," for the collection of which § 3670, 26 U.S.C. § 3670, gives it a lien, Chicco, on ordi-

nary principles, could not have challenged the merits of the assessment in an action under § 3678, 26 U.S.C. § 3678, to foreclose the lien.

The lack of precise authority either to prove or to disprove this contention is surprising. The statements quoted from Bull v. United States do not seem to have been necessary to the decision, namely, that an amount paid under an erroneous assessment could be used in recoupment against another tax claim for the same receipt even though the statute of limitations on a suit for refund of the tax erroneously assessed had run. Taxpayers point to the absence in § 3678 of a provision such as the direction in § 3679, 26 U.S.C. § 3679, relating to actions to clear title to realty, that in proceedings under the latter section "the assessment of the tax upon which the lien of the United States is based shall be conclusively presumed to be valid." They point out also that, in the course of the 1954 revision of the Internal Revenue Code, the House Bill added to § 3678 a provision identical to that just quoted from § 3679 but the Senate eliminated this. However, this history is inconclusive, since the House was careful to refer to its proposed change in § 3678 as the addition of an "express provision" and the Senate was equally careful to state that the elimination of the proposed addition "is not designed to change the effect under existing law given to the assessment in such an adjudication." 83d Cong. 2d Sess., H.R.Rep. No. 1337, page A–431; S.Rep. No. 1622, page 610.

In a suit by the government to enforce a tax lien under § 3678, the defendant clearly can raise such questions as whether the assessment complied with required procedures, Williams v. United States, 6 Cir., 1959, 264 F.2d 227 certiorari denied 361 U.S. 860, 80 S.Ct. 118, 4 L.Ed.2d 101, or whether by error the assessment was made against a taxpayer other than the one intended. Apparently he may challenge the assessment as having been barred by limitations of time. See United States v. Morrison, supra, 247 F.2d at page 290; United

States v. Peelle Co., D.C.E.D.N.Y.1951, 137 F.Supp. 905. In Morrison, a case arising under 28 U.S.C. § 2410, the Fifth Circuit also mentioned as a proper ground for inquiry that "the tax was not properly assessed"; [247 F.2d 290] but it is not clear whether the Court was thinking of the merits or only of procedure. Counsel have cited no case and we have found none where inquiry into the merits of the assessment was permitted in a suit to enforce a tax lien. In the absence of such authority we conclude the government's premise that this may not be done is adequately supported by the passages from Bull v. United States, which we have quoted.

 Once this premise is established, it is plain that plaintiffs carry a heavy burden of persuasion in contending that Congress nevertheless meant to allow inquiry into the merits of a tax assessment in an action under 28 U.S.C. § 2410. That section was adopted in 1931, ch. 515, 46 Stat. 1528. As then enacted, it did not contain the words "to quiet title to," and it related only to real property. The statute, it should be noted, is in no way limited to tax liens; it refers to any mortgage or lien which the United States has or claims. Even as to tax liens, however, it surely cannot be said that the statute as originally enacted would have had no purpose unless the merits of the assessment underlying the lien could be examined. For, in addition to the types of permissible attack on the assessment indicated above, at least two other purposes were served. One was to permit a person foreclosing a lien to show that property upon which the United States claimed a tax lien was not the property of the taxpayer; another was to permit removal of a tax lien junior to the lien being foreclosed. It

is no answer that § 3679 provided an additional remedy for some lien holders. For this was both narrow and cumbersome. It was limited to holders of liens notice of which had been duly filed of record and which were senior to the interest of the United States, or their successors; a request to the Commissioner to authorize the filing of the action had to be made; the Commissioner then had six months to consider this; if the Commissioner declined, a petition for leave to file had to be made to a District Court; and the District Court then had discretion either to grant or to refuse.

In 1942, 28 U.S.C. § 2410 was amended to include personal property and to extend the remedy to suits to quiet title. This latter amendment was made on the specific recommendation of Attorney General Jackson quoted in the margin.[4] Plaintiffs argue that, as to tax liens, the amendment would not accomplish the purpose proposed by the Attorney General and endorsed by the Congress, namely, to permit the clearing "of questionable or valueless Government liens," unless inquiry into the merits of the assessment is permitted, particularly since owners, as distinguished from prior lienors, normally cannot wipe out valid junior tax liens simply because the lien has no monetary value.

While 28 U.S.C. § 2410 as amended need not be construed as laden with all the historic exceptions on the equitable action to quiet title, we do not believe the Attorney General's recommendation bears the construction that plaintiffs assert. We think that so far as his reference to government liens that were "questionable or valueless" related to tax liens—and we emphasize again that 28 U.S.C. § 2410 covers many others—he was speaking, not of cases where an as-

4. "In many instances persons acting in good faith have purchased real estate without knowledge of the Government lien or in the belief that the lien had been extinguished. In other instances mortgagees have foreclosed on property and have failed to join the United States. It appear that justice and fair dealing would require that a method be provided to clear real-estate titles of questionable or valueless Government liens. Accordingly, I suggest that the bill be amended by inserting the phrase 'to quiet title or' between the words 'matter' and 'for the foreclosure of' in line 4 of page 2 of the bill." H.R.Rep. No. 1191, 77th Cong., 1st Sess. 2 (1941); S.Rep. No. 1646, 77th Cong., 2d Sess. 2 (1942).

sessment might lack merit but of liens that were irregular from a procedural standpoint, that had been filed against property not belonging to the taxpayer or that were valueless for other reasons not going to the merits of the assessment. By 1942 Bull v. United States, supra, had been decided and it is unlikely in the last degree that the Attorney General would have opened in a suit under 28 U.S.C. § 2410, issues that, under the language of that case, were closed in direct proceedings to collect the tax. In Bank of America National Trust & Savings Association v. United States, D. C.S.D.Cal.1949, 84 F.Supp. 387, the amended 28 U.S.C. § 2410 was utilized to cancel a "valueless" tax lien in the very situation mentioned in the second sentence quoted from the Attorney General's letter. Another case demonstrating the utility that the amendment has with respect to tax liens, without opening the merits of the assessment, is Miners Savings Bank of Pittston v. United States, D.C.M.D.Pa.1953, 110 F.Supp. 563. Other possible uses consistent with the more limited interpretation of Congressional purpose are suggested by Bensinger v. Davidson, D.C.S.D.Cal.1956, 147 F.Supp. 240, and United States v. Morrison, supra.

■■ Plaintiffs' final contention on this phase of the case is that even though 28 U.S.C. § 2410 is held not to permit inquiry into the merits of the assessment underlying a tax lien in the ordinary case, such inquiry should be allowed here since this would have been an appropriate situation for enjoining the government from enforcing the tax lien under the exception to the anti-injunction statute, recognized in Miller v. Standard Nut Margarine Co., supra, [284 U.S. 498, 52 S.Ct. 263] at 510, where "extraordinary and exceptional circumstances render its provisions inapplicable." Plaintiffs find such "extraordinary and exceptional circumstances" in their doubts that they could maintain a suit for refund if they should pay the tax assessed against Chicco and also in the economic unfeasibility of this course

since the purchase price of the property was only $18,000 whereas the tax as assessed in 1954 was for over $15,000. While plaintiffs' doubts as to their standing to sue for a refund may not be warranted, see Bladine v. Chicago Joint Stock Land Bank, 8 Cir., 1933, 63 F.2d 317; United States v. Halton Tractor Co., 9 Cir., 1958, 258 F.2d 612, we agree this procedure would be highly unattractive., That alone, however, is not enough. No useful purpose would be served by citing the large number of cases that have held certain facts to create "extraordinary and exceptional circumstances" and the even larger number that have held others not to. Midwest Haulers v. Brady, 6 Cir., 1942, 128 F.2d 496, will serve as an example of the former, and Concentrate Manufacturing Corporation v. Higgins, 2 Cir., 90 F.2d 439, certiorari denied, 1937, 302 U.S. 714, 58 S.Ct. 33, 82 L.Ed. 551, and Milliken v. Gill, 4 Cir., 211 F.2d 869, certiorari denied, 1954, 348 U.S. 827, 75 S.Ct. 47, 99 L.Ed. 652 of the latter. We think the instant case does not fall within what must be maintained as a narrow exception if the strong policy of protecting the revenues underlying the anti-injunction statute, having nearly a century's standing, Act of March 2, 1867, ch. 169, § 10, 14 Stat. 475, 26 U.S.C.A. § 7421, is not to be frittered away. For, while the government's suggestion that plaintiffs sue their grantor for breach of warranty is unrealistic, no reason has been suggested why plaintiffs cannot recoup their loss by suit against the title company which overlooked the government's properly filed tax lien.

■ The remaining question concerns the extent to which the plaintiffs or the defendant Yorkville are entitled to the proceeds of sale of the property in priority to the tax lien. This issue arises because, as stated above, the mortgage held by North New York, which was senior to the tax lien, was paid off at the closing with funds obtained by plaintiffs from a $12,000 loan from Yorkville secured by a new mortgage. At the trial all parties agreed that Yorkville should

first be paid the $8,573.49 that had been owing to North New York, together with any interest that had accrued and had not been paid to Yorkville. In fact, there was no such accrued interest since plaintiffs had kept the Yorkville mortgage current. Plaintiffs contended they were entitled to priority for interest on this same sum. The District Judge overruled this. The government seeks to uphold his ruling on the basis of an alleged stipulation at the trial and also on the ground that this would be the proper result in any event. As we read the colloquy which the government calls a stipulation, the only agreement concerned the amount to which Yorkville was entitled in priority to the government's claim; plaintiffs did not abandon any rights they might have on their own account. In paying off North New York's mortgage, both Yorkville and plaintiffs conferred a benefit on the government as a result of a mistake of fact, to wit, their ignorance of the government's tax lien. We say that both conferred this benefit, for while Yorkville advanced the monies, plaintiffs became liable to Yorkville for them. To prevent unjust enrichment of the government, equity will preserve for the benefit of Yorkville and plaintiffs the senior encumbrance which they caused to be discharged. American Law Institute, Restatement of Restitution, § 162. The Thrift v. Michaelis, 1932, 259 N.Y. 302, 181 N.E. 580; Burgoon v. Lavezzo, 68 App.D.C. 20, 92 F.2d 726, 113 A.L.R. 944. They were entitled to have this equitable lien foreclosed immediately. Had that been done, Yorkville would have had the use of the $8,573.49 since 1955, and plaintiffs would have been relieved *pro tanto* of interest payments to Yorkville. Delay by Yorkville and plaintiffs in learning of their mistake and the further delay incident to legal proceedings, neither attributable to any fault on their part, should not change the result. No one disputes this as to Yorkville, and we see no reason why, once Yorkville's priority claims are met, plaintiffs' should not be. In United States Fidelity & Guaranty Co. v. Triborough Bridge Authority, 1947, 297 N.Y. 31, 74 N.E.2d 226, the Court of Appeals held that a surety for a contractor which had paid amounts owing to subcontractors was entitled to interest as well as principal out of monies which the Bridge Authority was withholding from the contractor pursuant to contract, in priority to a United States tax lien against the contractor filed before payment by the surety. To be sure, Judge Fuld's opinion places the surety's priority, as to both principal and interest, on the ground that the equitable lien arose from the contract of suretyship which antedated the tax lien, but here a similar role is played by the senior mortgage which equity will preserve. We need not determine whether the New York decision is controlling or merely persuasive since we agree with it and have found no contrary Federal authority.

We therefore direct that the judgment entered by the District Court be modified to provide that the net proceeds of the sale shall be applied, first to payment of the mortgage of Yorkville to the extent of $8,537.49 with interest thereon at the rate of 5%, stipulated in North New York's mortgage, from April 28, 1955, to the extent that such interest has not been paid; second, to payment to the plaintiffs of interest at the rate of 5% from April 28, 1955, less any amounts payable to Yorkville by way of interest as above provided; third, to the satisfaction of the government's lien; and the balance, if any, to the respective parties as their interests may appear.

As so modified the judgment is affirmed, without costs on appeal.