291 F.2d 520
 100 A.L.R.2d 858, 61-2 USTC P 9495
 UNITED STATES of America, Plaintiff-Appellee,
v.
Raymond A. O'CONNOR, Bertha K. O'Connor, Raymond A.
O'Connor, Executor under the Last Will and Testament of
Elizabeth F. Fitzpatrick, sometimes known as Mary Elizabeth
Fitzpatrick, deceased, Raymond A. O'Connor, Julian J.
O'Connor and John K. O'Connor, individually and as
co-partners, trading and doing business under the name of R.
A. O'Connor & Co., Burt Packing & Warehouse, Inc., Burt Cold
Storage Co., Inc., Chisholm Ryder Co., Inc., Howard L.
Kaynor, County Treasurer, Niagara County, New York, Cecilia
Finnigan, Carmelite Sisters, St. Catharines, Ontario,
Catholic Extension Society, Toronto, Ontario, Rev. Thomas A.
O'Connor, St. Paul, Minnesota, rev. Mr. Thomas A. O'Connor,
Fordham University, New York, New York, Rev. Father
Campbell, whose Christian name is unknown, Catherine E.
Kelly, 2322-41st Street, N.W., Washington, D.C., Vivian A.
O'Connor, Maid of the Mist Steamboat Co., Inc., Niagara
Falls, New York, Cocker Saw Co., Inc., Burt, New York,
Defendants-Appellants.
 No. 115, Docket 26057.
 United States Court of Appeals Second Circuit.
 Argued May 16, 1961.
Decided June 5, 1961.
 
 Richard M. Roberts, Sec. Chief, Claims, Tax Division, Dept. of Justice, Washington, D.C. (Neil R. Farmelo, U.S. Atty., Buffalo, N.Y., Charles K. Rice, Asst. Atty. Gen., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, James P. Turner and Robert W. Kernan, Attys., Dept. of Justice, Washington, D.C., on the brief), for plaintiff-appellee.
 Charles J. McDonough, Buffalo, N.Y. (Mc, donough, Boasberg & McDonough, Buffalo, N.Y., on the brief), for defendants-appellants.
 Before FRIENDLY and SMITH, Circuit Judges, and WATKINS, District judge.*
 FRIENDLY, Circuit Judge.
 
 
 1
 This appeal concerns the civil side of the long-standing tax controversy between the United States and Raymond A. O'Connor of Niagara Falls. O'Connor was convicted in 1954 and again in 1957 of wilfully attempting to evade payment of his income taxes for 1946-1949; both convictions were reversed by this Court on grounds not going to the merits of the Government's claim, 1956, 237 F.2d 466; 1959, 273 F.2d 358.
 
 
 2
 On September 12, 1951, the Commissioner made jeopardy assessments against Raymond O'Connor and his wife Bertha for deficiencies in income taxes, fraud penalties and interest totalling $409,370.28 for the years 1943-1949; Int.Rev. Code of 1939, 273(a), 26 U.S.C.A. 273(a). Thereafter Raymond and Bertha filed a petition in the Tax Court requesting a redetermination of the deficiencies and penalties; however, no bond to stay collection of the tax was filed, as permitted by 273(f) of the 1939 Code. The Commissioner answered and taxpayers replied; no further proceedings have been taken. On August 4, 1952, the Commissioner made transferee assessments, under 311, in the sum of $261,209.00 against Elizabeth F. Fitzpatrick as alleged transferee of certain real prperty deeded to her by Bertha O'Connor on July 31, 1951.
 
 
 3
 On August 23, 1957, just before the six year statute of limitations, Int.Rev. Code of 1954, 6502, 26 U.S.C.A. 6502, would have run on the O'Connor assessments, the Government brought this action under 7403. The complaint alleged, in addition to certain of the facts set forth above, that the assessment lists covering the assessments against the O'Connors had been received by the Collector in Buffalo on September 14, 1951, notice and demand upon the taxpayers made that day, and notices of the tax liens filed on September 21; that, in the case of the Fitzpatrick assessment, the assessment lists were received August 7, 1952, notice and demand made that day, and notice of lien filed on August 8; that seven parcels of real estate and a mortgage standing in the name of Bertha O'Connor but allegedly owned by Raymond had been fraudulently conveyed to Mrs. Fitzpatrick; that O'Connor had an interest in an accounting partnership, held a claim against Chisholm Ryder Co., Inc., and wholly owned and controlled two other companies, Burt Packing and Warehouse, Inc. and Burt Cold Storage Co., Inc. which owed him large sums; and that other named defendants claimed interests or liens upon or against O'Connor's properties. The complaint sought a personal judgment against the O'Connors for the amount assessed; the setting aside of the transfers to Mrs. Fitzpatrick; judgment against Raymond O'Connor, as executor of her estate, for the amount of the transferee assessment; determination of the validity and priority of all liens and claims with respect to the O'Connors' properties; sale and distribution to satisfy the liens; and, finally, the appointment of a receiver to enforce the Government's lines against the properties of the O'Connor's and the two Burt corporations with the powers of a receiver in equity. Annexed to the complaint was a certificate of the Commissioner, 7403(d), that apppointment of a receiver for the O'Connors and the two companies was in the public interest.
 
 
 4
 The late Judge Morgan issued an order requiring defendants to show cause on July 28, 1958, why the prayer for the appointment of a receiver should not be granted. On the return day the Government presented a 'Memorandum of Points Relied Upon' and affidavits. Some of these, by E. C. Coyle, Jr., then District Director of Internal Revenue, related to the facts of assessment, notice and demand, filing, etc.; they recited also that in September 1951, large tax deficiencies, not alleged in the complaint, had been assessed against the two Burt companies, and notice and demand made. The Memorandum of Points stated that, for proof of other facts to support the appointment of a receiver, the Government relied on other affidavits attached to the Memorandum, on copies of deeds and of probate papers relating to Mrs. Fitzpatrick, and on the entire transcripts of the two criminal trials. The Government also served a subpoena on Raymond O'Connor.
 
 
 5
 At the hearing on July 28, counsel for the defendants asked the Court to quash the subpoena as violating O'Connor's Fifty Amendment privilege against selfincrimination and for time to brief and prepare to argue 'various questions of law with respect to the validity of the Government's lien after certain sales of real estate which were deeded out of Bertha O'Connor, the defendant, prior to the filing of assessment rolls in this case'; he indicated he might also wish to object to use of the transcripts of the criminal trials. The judge set times for the filing of answering affidavits and briefs and adjourned the matter until September 2; the defense filed a brief dated August 18 but no answering affidavits. Apparently no proceedings were had on September 2. On September 4, Judge Burke announced that, due to serious illness, Judge Morgan was unable to be present as expected, but that he had made a decision, which Judge Burke distributed.
 
 
 6
 The decision recited the facts; determined that, although the Court in its discretion would not consider any portion of the transcript of the first criminal trial before Judge Knight, it would consider the entire transcript of the second trial, over which Judge Morgan had presided; granted the prayer for the appointment of a receiver, who was also to determine the issues of fact and law raised by the complaint; and denied the motion to quash the subpoenas, which appears to have been rendered moot. The judge said his decision was based on the oral argument, presumably on July 28, and the briefs, and that 'in the considered opinion of this Court, further argument and/or testimony is unnecessary for the exercise of the discretion of the District Court in the appointment of a receiver.' There followed, on September 10, 1958, the order, here under appeal, appointing Clarence R. Runals as receiver and also as special master.
 
 Appealability
 
 7
 An order appointing a receiver is appealable under 28 U.S.C. 1292(a)(2). An order appointing a special master, standing alone, would not be, although it could normally be attacked by a petition for mandamus to the court and prohibition to the master, La Buy v. Howes Leather Co., 1957,352 U.S. 249, 254-260, 77 S.Ct. 309, 1 L.Ed.2d 290; Webster Eisenlohr, Inc. v. Kalodner, 3 Cir., 1944, 145 F.2d 316; United States v. Kirkpatrick, 3 Cir., 1951, 186 F.2d 393. Our jurisdiction under 1292(a)(2) over the order appointing the receiver would surely empower us to remove from the appointee functions that a receiver may not properly perform, 28 U.S.C. 2106. Whether it would extend to deciding that no special master may properly be appointed is doubtful, and we must consider that question even though the Government has not raised it. In the Ninth Circuit the problem would be solved by treating the appeal, insofar as it related to an order non-appealable but susceptible of attack by mandamus, as a petition for the latter, Shapiro v. Bonanza Hotel Co., 9 Cir., 1950, 185 F.2d 777; Steccone v. Morse-Starrett Products Co., 9 Cir., 1951, 191 F.2d 197; our seemingly contrary position, Abbe v. New York, N.H. & H. Ry. Co., 2 Cir., 1948, 171 F.2d 387; Mottolese v. Preston, 2 Cir., 1949, 172 F.2d 308; Zamore v. Goldblatt, 2 Cir., 1953,201 F.2d 738, has been characterized as 'a very peculiar doctrine for a modern court to espouse.' 6 Moore, Federal Practice (1953 ed.) p. 93; cf. Magnetic Engineering & Mfg. Co. v. Dings Mfg. Co., 2 Cir., 1950, 178 F.2d 866; Arrowhead Co. v. The Aimee Lykes, 2 Cir., 1951, 193 F.2d 83. Whatever the reasons for requiring a formal petition addressed to the judge may have been in the three cases cited, there can hardly be any in a case where the judge is no longer able to respond[1] and a portion of his order is within the interlocutory appeal statute; it would be undue formalism for us here to refuse to express our views on an issue where mandamus would lie and perhaps thereby lead the District Court, in deference to Judge Morgan, into action that would provoke a later petition for mandamus and affirmative action thereon. Cf. Florida v. United States, 8 Cir., 1960, 285 F.2d 596, 599-601, where the non-appealable order was not of the sort as to which mandamus would issue.
 
 Appointment of the Receiver
 
 8
 ( 1) Appellants claim they were deprived of a fair hearing. They were not. The proceedings on July 28 made plain that any further factual material was to be presented in affidavits rather than in open court; appellants chose not to file any. The adjourned session was to be only for further argument a privilege the judge was not required to grant, see F.C.C. v. WJR, The Goodwill Station, 1949, 337 U.S. 265, 275-276, 69 S.Ct. 1097, 93 L.Ed. 1353. Still it might be argued that, having granted it, he was obliged to go through with it, since appellants might have refrained from presenting relevant legal considerations in reliance on his promise. That contention is not open here, for two reasons: The first is that appellants did file a brief which appears to have made a complete presentation of their legal case. The second is that any relevant legal claims are still open in this court-- it would be absurd to reverse to allow the District Court to hear arguments against Judge Morgan's power to appoint a receiver which we would deem it error for that Court to accept; and it is apparent that any arguments going to discretion were fully made on July 28 and in the brief. Of course, the procedure here followed was not a desirable one; but it was pursued only because of Judge Morgan's serious illness and we cannot see that it deprived appellants of any substantial rights.
 
 
 9
 (2) Appellants' second attack is that the Government failed to prove demand, which 3670 of the 1939 Code, 26 U.S.C.A. 3670, requires before the lien of a tax may attach. They make much of the point that Coyle's affidavit alleges there were sent to the O'Connors in 1951 forms of Statements of Income Tax Due, labelled Form 17-A, which, in fact, did not then exist, the then applicable form of notice of assessment and demand for payment being Form 7658. However, there were also annexed to Coyle's affidavits copies of the Assessment Certificate and accompanying Assessment List in regard to the O'Connors and also in regard to Mrs. Fitzpatrick, and the 'Remakrs' column of these lists carries a reference '(7658-- Sept 14 1951)' for the O'Connors and '(7658-- Aug 7-1952)' for Mrs. Fitzpatrick. This sufficiently proved the mailing of Form 7658 in the absence of countervailing evidence.
 
 
 10
 ( 3) Appellants' claim that the pendency of the Tax Court proceedings prevented the appointment of a receiver flies in the face of the reasons underlying the statutory provisions for jeopardy assessments. These were necessary concomitants to establishment of the procedure whereby normally taxpayers may obtain a review of the Commissioner's determination in advance of payment; without provision for jeopardy assessments there would be too many cases in which the time spent in such a review might defeat collection of the tax. As explained in Sen.Rep. No. 52 (69th Cong. 1st Sess.), pp. 26-27, incident to the Revenue Act of 1926 (1939-- 1 Cum.Bull. 332, 352), the system of jeopardy assessment 'does not interfere in any manner with the regular course of deficiency letters, petitions to the Board, and appeals therefrom to the circuit court of appeals'; but neither do the latter stay collection of the tax when a jeopardy assessment has been made, unless the taxpayer files a bond as permitted by 273(f) of the 1939 Code. If, after collection, the courts determine the Commissioner has over-assessed, a refund will be made. There are no valid objections to this procedure on constitutional grounds, see Phillips v. Commissioner, 1931, 283 U.S. 589, 597-601, 51 S.Ct. 608, 75 L.Ed. 1289.
 
 
 11
 (4) Finally, appellants argue that the Government did not establish it had valid claims against any f the defendants, and especially against the property of Mrs. O'Connor, who had filed no income tax returns, or of Mrs. Fitzpatrick. Even though, as we later hold, the assessment is not conclusive in an action under 7403, the remedy of the appointment of a receiver does not depend on the Government's having already proved its claim and its lien; that is one of 'the matters' which the court is to 'adjudicate * * * and finally determine.' It is sufficient if the Government makes a prima facie showing, United States v. Peelle Co., 2 Cir., 1955, 224 F.2d 667, 669; '* * * where the record shows that a substantial tax liability probably exists, and that the Government's collection of the tax may be jeopardized if a receiver is not appointed, the appointment will be made,' 9 Mertens, Law of Federal Income Taxation, Supp. (1960) p. 41, and cases cited; Florida v. United States, supra, 285 F.2d at page 602. Here the facts summarized in the Government's Memorandum of Points made out such a case. There was no error in permitting the Government to present these by affidavits, and the record in the criminal trial served the purpose as well or, indeed, better.[2] See Bromberg v. Moul, 2 Cir., 1960, 275 F.2d 574, 576.
 
 Appointment of the Special Master
 
 12
 Renewing their complaint as to denial of a fair hearing, aggravated, on this branch of the case, by the fact that the Government had not sought a reference, appellants attack the appointment of the Special Master on four additional grounds:
 
 
 13
 (1) That, under our decision in Pipola v. Chicco, 2 Cir., 1960, 274 F.2d 909, the assessment is conclusive as to the merits, hence there is no question as to the tax for the special master to determine;
 
 
 14
 (2) That the pending Tax Court proceedings barred any litigation of the merits of the tax claims in the District Court;
 
 
 15
 (3) That the appointment of a Special Master violated the dictate of F.R.Civ.Proc. 53(b), 28 U.S.C.A., that 'a reference shall be made only upon a showing that some exceptional condition requires it'; and
 
 
 16
 (4) That, in any event, the receiver should not have been appointed special master.
 
 
 17
 The last objection is clearly sound. Although in theory the receiver may have no interest in whether any claims are established, in fact he certainly does; such an interest, as well as his duties to the claimants and the taxpayer, disqualify him from performing the judicial duties here imposed, see Tumey v. State of Ohio, 1927, 273 U.S. 510, 522, 47 S.Ct. 437, 71 L.Ed. 749, and cases cited. It goes without saying that this observation betrays no lack of confidence in the indivicual here appointed; we enforce a general principle. As previously intimated, we could stop at this point, but to do so would leave the District Court uncertain whether it ought not appoint another special master. We turn therefore to appellants' first claim.
 
 
 18
 Pipola v. Chicco, supra, was an action by purchasers of real estate under 28 U.S.C. 2410(a) to cancel a Government tax lien against their grantor as erroneously assessed. The Government challenged plaintiffs' right to go behind the assessment; it urged, on the authority of a dictum in Bull v. United States, 1935, 295 U.S. 247, 259-261, 55 S.Ct. 695, 79 L.Ed. 1421, that the grantor could not have done so, hence a fortiori the grantee could not. Stating that 'The lack of precise authority either to prove or to disprove this (the former) contention is surprising' (274 F.2d 912) and that 'Counsel have cited no case and we have found none where inquriy into the merits of the assessment was permitted in a suit to enforce a tax lien,' we concluded, in an opinion by the writer, that 'the government's premise that this may not be done is adequately supported' by the Bull dictum.
 
 
 19
 Our intuition that there must be authority on this issue has proved sounder than our belief that, on a question of tax collection procedure, the Government could be expected to have known of it. The Government has not elaborately researched the point and has concluded that it erred in arguing to us in Pipola that, in a suit under what is now 7403, a taxpayer may not challenge the merits of the assessment underlying an asserted lien, although it contends the decision was none the less correct because of asserted differences between the rights of the taxpayer and of a third person[3] -- an issue not now before us. Another Court of Appeals has found our statement disturbing, United States v. Coson, 9 Cir., 1961, 286 F.2d 453, 463-464. For reasons now to be stated, we now overrule it.[4]
 
 
 20
 The Government's present position starts from the language of subsection (c), 'The court shall * * * proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property.' That alone settles nothing; for, if, as said in Bull, the assessment in fact had all the force of a judgment save in a proceeding before the Tax Court under 6213, 26 U.S.C.A. 6213, or in a refund suit under 7422 of the Code, 28 U.S.C.A. 7422, and 28 U.S.C. 1346(a)(1), 'the merits' would be simply the procedural regularity of the assessment and the determination of the property to which the lien attached. However, we are convinced the assessment does not have so broad an effect.
 
 
 21
 Two early Supreme Court decisions, not mentioned in Bull or cited to us in Pipola, held that when the Government sues on a bond to secure payment of an assessment, the legality of the assessment is open for judicial determination, Clinkenbeard v. United States, 1874, 21 Wall. 65, 22 L.Ed. 477; United States v. Rindskopf, 1881, 105 U.S. 418, 26 L.Ed. 1131.[5] See also United States v. Philadelphia & Reading R.R. Co., 1887, 123 U.S. 113, 116, 8 S.Ct. 77, 31 L.Ed. 138. Other early cases to the same effect are United States v. Bank of America, C.C.E.D.Pa.1883, 15 F. 730, and United States v. Nebraska Distilling Co., 7 Cir., 1897, 80 F. 285; contra, United States v. Hauser, D.C.S.D.Cal.1938, 25 F.Supp. 689. In Bowers v. American Surety Co., 2 Cir., 1929, 30 F.2d 244, 245, Judge Learned Hand stated that 'in an action at law to recover a tax, the United States must prove that the tax is due,' citing Clinkenbeard and Rindskopf, although the assessment would be conclusive as to the legality of the tax for purposes of distress or in a suit to enforce a bond given to hold that off.
 
 
 22
 The question thus becomes whether in a suit under 7403 the assessment is conclusive, as it would be in a summary method of enforcement, or presumptive but inconclusive, as it would be in an action at law on the assessment or on a bond to secure its payment. A number of cases have stated the latter. United States v. Feazel, D.C.W.D.La.1943, 47 F.Supp. 679; United States v. Acri, D.C.N.D.Ohio 1952, 109 F.Supp. 943, affirmed 6 Cir., 1953, 209 F.2d 258, reversed on other grounds, 1955, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264; United States v. Ridley, D.C.N.D.Ga.1954, 127 F.Supp. 3; Graham v. United States, 9 Cir., 1957, 243 F.2d 919. In addition to United States v. Hauser, supra, there is also some slight authority for the former view, United States v. Briglia, D.C.S.D.N.Y.1960, 182 F.Supp. 271. We think the closer analogy is to the action at law on the assessment; when the Government seeks the aid of the courts in enforcing the assessment in any form, it opens the assessment to judicial scrutiny in all respects. See Murray's Lessee v. Hoboken Land & Improvement Co., 1855, 18 How. 272, 283-285, 15 L.Ed. 372; Damsky v. Zavatt, 2 Cir., 1960, 289 F.2d 46.
 
 
 23
 This conclusion also is supported by history. The present 7403 began as 106 of the Act of July 20, 1868, c. 186, 15 Stat. 125, 167; this became Rev. Stat. 3207. Section 1030 of the Revenue Act of 1924, c. 234, 43 Stat. 253, 350, renumbered it as (a) and added, as (b), what is now 7224 of the 1954 Code, 26 U.S.C.A. 7424, dealing with civil actions by third persons to clear title to property. The presence in what was then Rev.Stat. 3207(b) of a provision that, in proceedings thereunder, 'the assessment of the tax upon which the lien of the United States is based shall be conclusively presumed to be valid,' and the absence of such a provision in 3207(a), had a significance when the two sections were juxtaposed more apparent than now when they have been separated. Again, when in 1936, 3207(a) was amended to include personal property, c. 690, 49 Stat. 1648, the House report stated this would 'give the Government an opportunity to secure a determination of the tax liability of a taxpayer in a court of equity * * *' H.R.Rep. No. 2818, 74th Cong. 2d Sess., p. 7. Finally, the history of the 1954 Code itself, which we found 'inconclusive' in our previous opinion, 274 F.2d at page 912, as the Government then urged, assumes a new aspect when we now learn that the Senate's rejection of the House amendment that would have inserted the 'conclusive' language of 7424 into 7403, was preceded by an objection at the Senate Hearings on H.R. 8300, Part 1, pp. 611-612, by the Association of the Bar of the City of New York, that since the defendant may show an assessment as 'erroneous, excessive or ellegal' when a suit at law is brought upon it, 'It seems illogical to deny such right to the taxpayer in a suit to enforce a tax lien.'
 
 
 24
 Appellants' two other attacks on the appointment of a special master are best considered together. The first is that a taxpayer who has seasonably elected to have his tax liability determined by the Tax Court may not be forced to trial before another forum. The Government responds that the procedure before the Tax Court was simply intended 'to furnish a forum where full payment of the assessment would not be a condition precedent to suit,' Flora v. United States, 1960, 362 U.S. 145, 163, 80 s.Ct. 630, 4 L.Ed.2d 623, and that where a jeopardy assessment has been made and the taxpayer, by failing to obtain a stay through filing a bond, has created a situation in which judicial (as well as extrajudicial) methods of collection may be put in motion, the Tax Court and the District Court have concurrent jurisdiction to determine the tax-- a position not altogether reconcilable with the statement of the Senate Committee, quoted above, Sen.Rep. No. 52 (69th Cong. 1st Sess.), pp. 26-27 (1939-1 Cum.Bull. 332, 352), that in such a case 'the right of the taxpayer to have the correct amount of the deficiency determined by the Board and the appellate courts is not interferred with * * *' Without determining whether apellants' position is sustainable in its fullest reach, we think a wise exercise of discretion would generally favor a procedure whereby a taxpayer who has elected to have his liabilities determined by the Tax Court ought be allowed to follow that course to a conclusion, provided he diligently pursues it.[6] Here two considerations might have indicated a contrary course, assuming, as we do arguendo, that this was open. One was the long delay in moving the Tax Court case to trial; however, the Government seems to have been quite willing to tolerate that. The other was the late Judge Morgan's familiarity with the facts as a result of his having presided at the second criminal trial. However, that consideration would have been more cogent if the issue were the propriety of the judge's hearing the case himself rather than of appointing a master; in any event, it is no longer applicable. The general policy in favor of allowing taxpayers who have complied with prescribed procedures to have their tax liabilities determined by the expert body established by Congress for that purpose thus comes into play; and here that policy combines with the commands of F.R.Civ.Proc. 53(b) that 'A reference to a master shall be the exception and not the rule' and that 'in actions to be tried without a jury, save in matters of account, a reference shall be made only upon a showing that some exceptional condition requires it.' Now that Judge Morgan's special knowledge of the case is forever lost, we see no exceptional condition that would justify reference to a master when the Tax Court is available.
 
 
 25
 Order affirmed insofar as it appoints a receiver, vacated insofar as it appoints a special master.
 
 
 
 *
 United States District Judge for the Northern and Southern Districts of West Virginia, sitting by designation
 
 
 [1]
 We note a possible counter-argument namely, that Judge Morgan's death would prevent the issuance of mandamus under the principle of United States v. Boutwell, 1873, 17 Wall. 604, 21 L.Ed. 721, and United States ex rel. Bernardin v. Butterworth, 1898, 169 U.S. 600, 18 S.Ct. 441, 42 L.Ed. 873, although prohibition to the master would still lie. We doubt the principle of the cited cases applies here; the action was of the District Court, not of the judge, 28 U.S.C. 132, and the writ may be directed to the court itself, Ex parte United States, 1932, 287 U.S. 241, 53 S.Ct. 129, 77 L.Ed. 283. See 6 Moore, Federal Practice (1953 ed.), p. 72, fn. 76, and Hartley Pen Co. v. United States District Court, 9 Cir., 1961, 287 F.2d 324
 
 
 [2]
 This is so despite appellants' argument that Raymond O'Connor was the only civil defendant who had been a party to the cirminal trial. Since no final determination was being made upon the merits, the Government's entire showing could have been by affidavits. To the extent that the trial testimony had been subject to cross-examination by anyone, it was tested that much more than affidavits would have been
 
 
 [3]
 Taken literally, this contention would mean that a transferee such as Mrs. Fitzpartrick could not contest an assessment although the taxpayer could
 
 
 [4]
 This opinion has been submitted to Chief Judge Lumbard and Judge Swan, who joined in the Pipola opinion; although the present panel necessarily takes full responsibility for the instant decision, Judges Lumbard and Swan have authorized me to say they perceive no objection to the withdrawal of the statements in Pipola here under consideration
 
 
 [5]
 A lower court had earlier reached the same result, in another case involving Rindskopf, in a suit on the assessment itself, C.C.E.D.Wis.1879, 27 Fed.Cas.No. 16,166, p. 816, under Rev.Stat. 3207, the ancestor of 7403
 
 
 [6]
 Cf. Florida v. United States, supra, 285 F.2d at page 604, dealing with a case where refund suits for some years were pending in the District Court and petitions for other years in the Tax Court, in addition to the action under 7403